**The STATE of Ohio, Appellee,**

v.

**MUCCI, Appellant.**

[Cite as *State v. Mucci,* 150 Ohio App.3d 493, 2002-Ohio-6896.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02 JE 13.

Decided Dec. 13, 2002.

Brian Felmet, Jefferson County Prosecuting Attorney, and Richard Ferro, Assistant Prosecuting Attorney, for appellee.

Jane Keenan, for appellant.

VUKOVICH, Presiding Judge.

{¶ 1} Defendant-appellant, Honey Mucci, appeals the decision of the Jefferson County Common Pleas Court that denied a joint motion filed by her and the state of Ohio to dismiss the 16–count indictment that the state had previously filed against her. The issue before us is whether the trial court was permitted to refuse to dismiss the indictment upon the joint motion to dismiss. We are thus called upon to examine the role of the judiciary versus the role of the prosecutor in determining whether indictments should be dismissed. For the following reasons, the judgment of the trial court is affirmed, and this case is remanded for further proceedings.

## STATEMENT OF THE CASE

{¶ 2} The Ohio State Pharmacy Board conducted an investigation of prescription drug purchasers in Jefferson County. Apparently, multiple individuals were indicted as a result of the investigation. Appellant was indicted on February 6, 2002, for eight counts of obtaining a prescription by deception and eight corresponding counts of possession of those prescription pills. Specifically, the indictment alleged one fourth-degree felony, eight fifth-degree felonies, and seven third-degree misdemeanors. The following eight types of prescriptions were procured on the following dates: 36 capsules of Butalbital on January 16, 2000; 36 capsules of Butalbital on January 21, 2000; 32 capsules of Butalbital on February 11, 2000; 90 capsules of Butalbital on November 27, 2000; 400 mg. of Oxycontin on December 14, 2000; 90 capsules of Butalbital on December 27,

2000; 12 tablets of Hydrocodone on May 17, 2001; and 90 capsules of Butalbital on May 25, 2001.[1]

{¶ 3} Appellant was arraigned on February 13, 2002. Counsel was appointed and filed a request for intervention in lieu of conviction. That same day, the state filed its answers to oral requests for a bill of particulars and for discovery. In the state's filed discovery packet, the board's investigative report establishes that appellant obtained many similar prescriptions during this same period, sometimes within one day of exactly the same prescription. The investigator highlighted the eight transactions as his suggestions for indictment, most likely because the unindicted prescriptions would serve as proof that even if she did medically need a prescription, she did not need two of the same prescriptions at the same time from different physicians and pharmacists.

{¶ 4} The assistant prosecutor assigned to the case was replaced on February 14, 2002. A hearing on the motion for intervention in lieu of conviction was set for March 1 and then rescheduled for March 6, 2002. Whether the hearing was held on March 6, 2002, is unknown; however, there was a conference in chambers some time before March 8, 2002, which is the date that appellant withdrew her request for treatment in lieu of conviction. Thereafter, she entered a not guilty plea at re-arraignment.

{¶ 5} On March 22, 2002, appellant filed a motion to dismiss under seal in an envelope. The date-stamped envelope in the file states that the motion is inside, yet the contents of the envelope have been removed. Upon inquiry, we were informed by the clerk, who was informed by defense counsel, that the motion was never filed; however, the docket and empty date-stamped envelope establish that the motion was filed, regardless of where it is now.

{¶ 6} On April 11, 2002, appellant and the state filed a joint motion for dismissal of the indictment with prejudice. The motion was specifically filed pursuant to Crim.R. 47 and 48(A) and R.C. 2941.33. The memorandum in

---

1. {¶ a} Oxycontin is a 12-hour time-release form of oxycodone, a pain reliever for chronic pain. It can be up to 30 times more powerful than a normal pain reliever. To avoid the time-release effect and induce rapid release of this Schedule II narcotic, illegal drug users crush the pill and chew, snort, or inject it. It is comparable to morphine when taken properly. However, when used improperly, as purposefully done by drug users, it is heroin-like (often dubbed "the new heroin" or "hillbilly heroin"). When forced to rapidly release, it is very addictive and dangerous to the point of being fatal. It is reported that the abuse of this drug threatens the medical care of those who truly need it due to intense law enforcement investigations of all prescribers of this drug.

{¶ b} Butalbital is a barbiturate and a Schedule III narcotic, meaning it has some potential for abuse and addiction. It is a pain reliever, relaxant, and hypnotic sedative used for migraines or tension headaches. Hydrocodone is also a Schedule III narcotic. A common brand name is Vicodin. It ranks along with OxyContin in being one of the most illegally diverted pharmaceuticals, albeit nowhere near as dangerous.

support stated that appellant was fully cooperative, as she had provided information to the prosecutor's office and law enforcement; that her cooperation had assisted in the investigation of substantial drug trafficking to juveniles; that she had been assessed by a person at Trinity Health System who recommended that she participate in an outpatient program; that she voluntarily attends Narcotics Anonymous and the state is satisfied with this treatment; and that the public interest will be satisfied by dismissal of the indictment with prejudice.

{¶ 7} The motion was heard on April 12, 2002. The hearing established that appellant began providing information to law enforcement and the prosecutor's office prior to the arraignment and appointment of counsel. It was disclosed that during appellant's cooperation, she covertly introduced an undercover agent to a juvenile who was familiar with a drug dealer. The court noted that it had previously advised the attorneys that it would not let appellant participate in any such field work, since she was seeking treatment in lieu of conviction and the court did not want her associating with drug users or sellers. The court expressed its opinion that appellant had withdrawn her motion for treatment specifically to get around the order of prohibition. The court mentioned that this was the *second request* to have the case dismissed and that it had overruled the motion once before. The court noted that a recommendation for a light sentence based on cooperation is one thing but dismissal of all charges with prejudice based solely on cooperation is another. When informed that the Board of Pharmacy had no objection to dismissal, the court asked for documentation. It appears that the state sent a letter to the court from the board prior to the court's decision. The letter, however, was not date-stamped until after the court's decision.

{¶ 8} The trial court took the motion under advisement, and on April 22, 2002, the court overruled the joint motion to dismiss the indictment, stating that it did not find good reason to dismiss the charges. The court noted that it had reviewed the pleadings, the discovery packet, the history of the proceedings, the arguments, and other information presented. When appellant filed its notice of appeal on April 29, 2002, we ordered jurisdictional memoranda to be filed. On August 9, 2002, we allowed the appeal to proceed, finding that the issue was subject to immediate review. The case was fully briefed on October 4, 2002, when the state filed a brief that merely reiterates the arguments set forth in the brief of appellant.

## ASSIGNMENTS OF ERROR

{¶ 9} Appellant's brief sets forth three assignments of error. The first assignment argues that the issue was final and appealable, an argument that this

court has previously sustained. The related second and third assignments and their issues presented read as follows:

{¶ 10} "The trial court erred when it refused to permit the state to fulfill its obligations under the valid nonprosecution agreement once both parties to the case agreed that the defendant has fully performed."

{¶ 11} "An otherwise valid and legal contract, that in no way runs afoul of public policy, between the defendant and the state should not be thwarted by the trial court because of some personal dislike for the contract."

{¶ 12} "The trial court erred when it wrongfully decided to become the prosecutor of the defendant by refusing to grant the joint motion to dismiss, despite an uncontradicted showing of good cause to dismiss all charges against the defendant."

{¶ 13} "The trial judge cannot usurp all power of the prosecutor, to the detriment of the defendant, by breaching the agreement between the parties in a manner that the prosecutor would be prohibited from doing."

{¶ 14} Both appellant and the state set forth facts that are not in the record below. For instance, they state that appellant is currently a nursing student who gets good grades and who has a young child. They also attach a judgment entry, entered by the trial court after this case was appealed, concerning another defendant in another prescription drug case involving a physician. Additionally, they attach a letter from the assistant prosecutor to appellant's attorney dated March 1, 2002. This letter states as follows:

{¶ 15} "Pursuant to extensive discussions between the Prosecutor's Office and your office I have been authorized to accept your terms with regard to the resolution of the above case.

{¶ 16} "That resolution will be as follows[:] your client, Honey Mucci, will be provided immunity and I hereby promise, on behalf of the Jefferson County Prosecutor's Office, that Honey Mucci will not be charged or indicted for any crime that occurred prior to tod[a]y's date, including, but not limited to, crimes that may be revealed as a result of her cooperation in the future. Your document has been executed and is hereby attached.

{¶ 17} "Furthermore, your client's cooperation with law enforcement will include an agreement by the Jefferson County Prosecutor's Office to dismiss with prejudice all charges against Honey Mucci in Case No. 02–CR–36 [the case herein]." ·

{¶ 18} Both briefs also attach a proposed judgment entry dated March 1, 2002, and signed by both sides, which states, "Upon motion of the Prosecutor and by agreement of the parties, the charges * * * are hereby dismissed with

prejudice." Presumably, this is the document that is mentioned above in the prosecutor's letter to appellant's attorney. (Possibly, this also represents the missing sealed motion to dismiss.)

{¶ 19} In any event, there is absolutely no indication that this letter was ever presented to the trial court. In fact, neither party actually focuses on an agreement in the joint motion to dismiss or in the transcript of proceedings below. Rather, they seem to argue merely that the charges should be dismissed because appellant provided great assistance in a drug investigation. In any case, the following legal background is necessary to conduct a thorough analysis of the issues presented herein.

## BACKGROUND LAW ON NONPROSECUTION AGREEMENTS

{¶ 20} Our recent case, *State v. Stanley* (2002), 7th Dist. No. 99CA55, 2002-Ohio-3007, 2002 WL 1370806, is instructive. Therein, we outlined and explained the various types of nonprosecution agreements, or attempted nonprosecution agreements, that exist and their differences.

{¶ 21} First, there is the plea bargain or negotiated plea agreement, which is governed by Crim.R. 11. In some plea agreements, the state agrees to request dismissal of one or more charges in return for a guilty or no contest plea to one or more charges. Yet the trial court has the discretion to accept or reject a plea agreement. See *In re Disqualification of Economus* (1991), 74 Ohio St.3d 1230, 1231, 657 N.E.2d 1340; *In re Disqualification of Mitrovich* (1990), 74 Ohio St.3d 1219, 1220, 657 N.E.2d 1333, citing *State v. Ridgeway* (1990), 66 Ohio App.3d 270, 276, 583 N.E.2d 1123. Thus, the state cannot agree to ensure dismissal of certain charges but can merely agree to request dismissal. Once the court accepts the plea agreement, then the state is bound by its agreement.

{¶ 22} The second category discussed in *Stanley* is a grant of immunity pursuant to R.C. 2945.44. The purpose of this statute is to avoid application of the Fifth Amendment privilege against self-incrimination. Hence, if a witness refuses to produce information based on his privilege against self-incrimination, the court of common pleas shall, unless it finds that to do so would not further the administration of justice, compel the witness to testify if both of the following apply: (1) the prosecuting attorney makes a written request and (2) the court informs the witness that he will receive immunity. R.C. 2945.44(A). The plain language of the immunity statute requires the court's participation, consent, and order. See *State v. Adamson* (1998), 83 Ohio St.3d 248, 251, 699 N.E.2d 478. Although not an issue before us, we note here that the letter from the prosecutor quoted above mentioned future immunity in the second paragraph; either the word immunity was used in a generic sense in a way that would fall under the

next category or the prosecution overstepped his bounds by promising to guarantee something that needs court approval.

{¶ 23} This brings us to the third category discussed in *Stanley*. This category represents a true nonprosecution agreement, whereby the suspect agrees to provide truthful information and the state agrees that the suspect will not be prosecuted at all. The rationale behind this type of agreement focuses on the prosecutor's discretion to initiate a criminal prosecution. *Stanley*, 7th Dist. No. 99CA55, 2002-Ohio-3007, at ¶ 48; *Pengov v. Leffler* (Oct. 23, 1998), 6th Dist. No. H–98–003, 1998 WL 735330. The key word overlooked by appellant and the state in this case is the word "initiate." "The Agreement was not to prosecute. The indictment is the beginning of a prosecution, which is exactly what the state agreed not to do as long as the appellant complied." *State v. Crosby* (Apr. 25, 1995), 5th Dist. No. 93CA57, 1995 WL 495345. Here, the prosecution was already initiated. In fact, the trial court pointed this out to the parties at the hearing when it explained that if the state had wanted to enter a nonprosecution agreement, it should never have indicted appellant.

{¶ 24} Therefore, the third type of agreement, which was the one at issue in *Stanley*, concerns unindicted crimes. For other examples of cases involving preindictment nonprosecution agreements see the following cases: *State v. Hansen* (Apr. 7, 1999), 9th Dist. No. 98CA0025, 1999 WL 194530; *State v. Reimsnyder* (May 2, 1997), 6th Dist. No. E–96–006, 1997 WL 224969. See, also, *State v. Small* (1987), 41 Ohio App.3d 252, 535 N.E.2d 352 (trial court agreed to dismiss charges; agreement was thus preindictment as to the second or reindictment). The latter two cases were erroneously cited by appellant in support of her position.

{¶ 25} As we specifically stated, "Non-prosecution agreements made before criminal proceedings are initiated are not subject to court approval * * *. In contrast, non-prosecution agreements which arise after there has been an indictment are subject to court approval." (Emphasis added.) *Stanley*, 7th Dist. No. 99CA55, 2002-Ohio-3007, at ¶ 48, 53. This brings us to the attempted agreement in the case at bar.

## LAW AND ANALYSIS

{¶ 26} We have before us an attempted·postindictment nonprosecution agreement. Hence, there is no agreement without court approval. Id. Pursuant to Crim.R. 48(A), entitled "Dismissal by the state," the state may *by leave of court* and in open court file an entry of dismissal in order to terminate the prosecution. Similarly, R.C. 2941.33 provides, "The prosecuting attorney shall not enter a nolle

prosequi in any cause without leave of the court, on good cause shown, in open court. A nolle prosequi entered contrary to this section is unlawful."

{¶ 27} These rules and statutes have been promulgated and enacted in order to curb abuses of executive prerogative. Under the common-law rule, a prosecutor had unlimited discretion to enter a nolle prosequi without any court involvement; however, the legislators and courts of this state and the federal government have acted to take this unlimited postindictment discretion away from the prosecutor. See 1944 Advisory Committee Notes to Fed.Crim.R. 48(A). See, also, Restatement of the Law, Contracts (1932), Section 549 (the prosecutor can bargain to recommend dismissal but not to secure dismissal). Therefore, a court in this state functions as a check and balance to the discretion of a prosecutor to dismiss an indictment.

{¶ 28} Accordingly, a prosecutor must have leave of court, granted after a showing of good cause, before an indictment can be dismissed. Crim.R. 48(A); R.C. 2941.33. See, also, *State v. Gotham* (Dec. 31, 1997), 11th Dist. No. 96–T–5485, 1997 WL 837550; *Lakewood v. Pfeifer* (1992), 83 Ohio App.3d 47, 51, 613 N.E.2d 1079, citing *Akron v. Ragsdale* (9th Dist.1978), 61 Ohio App.2d 107, 109, 15 O.O.3d 107, 399 N.E.2d 119, for the proposition that once the prosecution has been initiated, the prosecutor does not have the same unbridled authority to terminate the proceedings. Hence, the trial court had discretion to refuse to dismiss the charges if it found good cause lacking.

{¶ 29} If the arguments of the parties were correct, then any indicted defendant who assists the prosecutor must be released from criminal responsibility as long as the prosecutor asks·for dismissal of the indictment and informs the court that the defendant assisted. In essence, they contend that in such situations, the recommendation of the prosecutor constitutes good cause per se. However, this is not the rule under today's judicial system in Ohio, or in the federal system for that matter. Rather, the trial court is granted the sound discretion to evaluate each case presented before it and use that discretion, i.e. "freedom of choice," to determine whether good cause exists to support dismissal of the indictment with prejudice. Recognizing the possibility of this outcome, the parties alternatively argue that the trial court abused its discretion.

{¶ 30} We now review the court's decision (that there was a lack of good cause) for an abuse of discretion. An abuse of discretion requires trial court action that is unreasonable, unconscionable, or arbitrary. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Most instances of an abuse of discretion involve allegations that the decision is unreasonable. See *Davis v. Davis* (Dec. 26, 2001), 7th Dist. No. 2000C031, 2001 WL 1667852, citing *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.* (1990), 50 Ohio

St.3d 157, 161, 553 N.E.2d 597. A decision is unreasonable only if there is no sound reasoning process that would support it. Id. In conducting any abuse-of-discretion review, we do not review the trial court decision de novo, and we must refrain from improperly substituting our judgment for that of the trial court. See, e.g., *State v. Finnerty* (1989), 45 Ohio St.3d 104, 108, 543 N.E.2d 1233.

{¶ 31}  Here, the state's argument in support of good cause was merely that appellant provided valuable information and assistance in a drug investigation.[2]  This argument could support the prosecutor's exercise of discretion to enter a true nonprosecution agreement, as was accomplished in the portion of the letter where he promised to refuse to indict on any crimes arising out of the investigation.  This argument could support the prosecutor *seeking court approval* for immunity in return for her testimony in any criminal proceedings against other defendants who were indicted in this investigation.  This argument may also be a good reason to offer her a favorable plea bargain, *recommending* dismissal of many of the charges and treatment and community control instead of jail.  However, we cannot find that the trial court abused its discretion in determining that there was not good cause for dismissing all 16 charges against appellant and leaving her accountable for nothing.  The trial court's refusal was not unreasonable, unconscionable, or arbitrary.  To the contrary, granting of the motion would have been quite a lucky break or windfall for appellant.

{¶ 32}  The fact that appellant is in nursing school does not tend to support dismissal, as the state claims.  Rather, it would tend to support the trial court's decision, as nurses typically have ready access to prescription drugs.  We also point out that the state believes that appellant is no longer a drug user even though her own voluntary assessment recommended outpatient treatment. Moreover, the charges were not as dated as the parties urge.  Further, in determining whether the charges should be wholly dismissed without prejudice, the trial court can and did view the discovery information that established a pattern of drug-obtaining behavior that was more extensive than that reflected by the indicted crimes.  Finally, there was no allegation of insufficient evidence, which is the most often used and most valid reason for dismissing indictments. In fact, there appears to be an abundance of evidence and witnesses that would allow the case against appellant to go forward.

---

2.  There is no indication in the record that the information was provided in reliance on the agreement; rather, it appears that most of the information was provided prior to reaching an agreement.  For instance, the trial court was informed that much information was provided even before arraignment.  Thus, even if appellant were correct in arguing that contract law is applicable, we respond that past consideration is no consideration at all.

{¶ 33}   The trial court acted within its sound discretion is denying the joint motion for dismissal of the indictment.   Under the foregoing analysis, appellant's assignments of error are overruled.

{¶ 34}   For the foregoing reasons, the judgment of the trial court is hereby affirmed, and this case is remanded for further proceedings.

Judgment affirmed
and cause remanded.

WAITE and DeGENARO, JJ., concur.