COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Kelsey and Alston
Argued at Alexandria, Virginia


CYNTHIA DAWN MOORE
                                                                    OPINION BY
v.        Record No. 1926-10-4                      JUDGE ROBERT J. HUMPHREYS
                                                                   MARCH 20, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
William H. Shaw, III, Judge Designate

Vanessa R. Jordan, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Cynthia Dawn Moore ("Moore") appeals her convictions by a jury in the Circuit Court

for the County of Stafford ("trial court") of three counts of worthless checks under Code

§ 18.2-181, three counts of obtaining money by false pretenses under Code § 18.2-178, and three

counts of uttering a forged writing under Code § 18.2-172.  On appeal, Moore contends that the

trial court erred by (1) denying her motion to strike two of the three obtaining money by false

pretenses charges pursuant to the single larceny doctrine where Moore simultaneously deposited

three money orders, (2) granting the Commonwealth's motion to *nolle prosequi* the issuing

multiple worthless checks indictment and prosecute Moore under three separate indictments of

Code § 18.2-181 where the evidence showed that she simultaneously deposited three money

orders, (3) failing to strike two of the three worthless check charges pursuant to the single

larceny doctrine where Moore simultaneously deposited three money orders, and (4) denying

Moore's motion to strike two of the three uttering charges pursuant to the single larceny doctrine where Moore simultaneously presented three money orders.

## I. Background

On May 4, 2009, a Stafford County grand jury indicted Moore for one count of issuing multiple worthless checks under Code § 18.2-181.1 and three counts of worthless checks under Code § 18.2-181. Subsequently, on February 1, 2010, the grand jury indicted Moore for three counts of false pretenses under Code § 18.2-178, three counts of uttering a forged note under Code § 18.2-170, three counts of forgery of a note under Code § 18.2-170, three counts of uttering a forged writing under Code § 18.2-172, three counts of forgery of a writing under Code § 18.2-172, and three counts of third offense larceny under Code § 18.2-104. All of the charges brought against Moore in the indictments related to her deposit of three counterfeit "Lucky MoneyGram" money orders in her checking account at Apple Federal Credit Union ("Apple") and her subsequent withdrawal of their balances. All of the indictments were set to be tried together.

Immediately prior to jury selection, the Commonwealth made a motion to *nolle prosequi*[1] the three indictments for third offense larceny, the three indictments for uttering a forged note, and the three indictments for forgery of a note prior to putting on its case-in-chief. The trial court granted the motion.

During a recess in the trial, the Commonwealth moved to *nolle prosequi* the indictment for issuing multiple worthless checks. The attorney for the Commonwealth provided no explanation for his request to *nolle prosequi* the multiple worthless checks indictment, and the

---

[1] Latin for "we shall not prosecute," a *nolle prosequi* is a declaration originating at common law to the judge by a prosecutor in a criminal case either before or during trial. Its general meaning is that the particular case or selective charge(s) before the court is/are no longer being pursued. It is often abbreviated simply to "*nol pros*" and used as both a noun and a verb.

trial court requested none. Moore objected to the motion on the theory that the legislature enacted the offense of issuing multiple worthless checks to eliminate multiple prosecutions of worthless check offenses. The trial court granted the motion over Moore's objection.

During its case-in-chief, the Commonwealth called Phillip Hannum ("Hannum"), the security manager at Apple, to testify. Hannum testified that he received three "Lucky MoneyGram" money orders that were returned from the Federal Reserve as counterfeit. The money orders were made payable to Cynthia Moore and listed "Don King" as the purchaser. They also listed the address 1402 Aquia Rd. From the markings on the money orders, Hannum deduced that they were deposited in the "Doc Store Court" branch on February 14, 2009. Hannum was able to use the time and date of the deposits to retrieve security footage from the "Doc Store Court" Apple branch and identified Moore in a still image taken from the footage.

Apple's collection department sent Moore a letter via certified mail regarding the money orders. The letter was sent to the 1402 Aquia Road address. Hannum testified that the purpose of the letter is to give Apple members[2] five days to "make things good." However, Apple never received a signed return receipt for the letter. Hannum then personally sent Moore an email on March 4th. Moore called Hannum on March 10th in response to the email. She informed Hannum that she had used the money to pay bills and that she deserved a break, because she had just gotten back from a "lunatic asylum." She also added that she would not be paying any of the money back.

Moore indicated to Hannum that she had gotten a job online. However, she was unable to identify her hiring officer, the name of her employer, a way to contact her employer, or the date she was hired.

---

[2] Since Apple is a credit union, all customers must be "members."

The Commonwealth also introduced a transaction summary for Moore's account and copies of withdrawal receipts signed by Moore. Moore's account showed a balance of $5.12 before the three money orders were deposited. At the time she deposited the money orders, Moore withdrew $100 against their balance. In the seven days following her deposit, she made withdrawals as follows:

| Date | Time | Withdrawal Amount |
|------|------|-------------------|
| 2/19/09 | 5:23 p.m. | $ 64.00 |
| 2/19/09 | 5:27 p.m. | $ 1,194.00 |
| 2/20/09 | 9:46 a.m. | $ 40.00 |
| 2/20/09 | 4:44 p.m. | $ 220.00 |
| 2/21/09 | 8:58 a.m. | $ 600.00 |
| 2/21/09 | 8:59 a.m. | $ 165.00 |

Hannum testified that Moore had not paid any of the money back at the time of the trial.

James Harris ("Harris"), a law enforcement officer with the Stafford County Sheriff's Department, testified that he talked with Moore in her kitchen on March 17th and that Moore told him that she received the money orders from "Don King" in a UPS envelope. Moore told Harris that she had "filled out an application to Google." Moore explained to Harris that the job was not with the company Google, but rather to "'google' things, play online games, and other things of that nature." Moore said that she was working for Publisher's Clearinghouse and that she had been employed for about a month.

Moore then informed Harris that she had spent some of the money paying off fines, $640 to buy a vehicle, and the rest on "little stuff here and there." Moore indicated that she was willing to repay the money, but that she had not done so yet.

Moore testified on her own behalf at trial. She testified that she lived at her father's house at 1402 Aquia Road off and on. At night, she would surf the web after her father went to bed. One night, a pop-up appeared that said you can earn money from home. Moore clicked the pop-up and more things would appear, so she clicked them too. She testified that, "if you play a

certain amount of games, like pogo or Iwon.com and if you spend a certain amount of time on there playing their games, they'll, like, send you a check."

Moore admitted that she used the money obtained from depositing the money orders to buy a car and pay off fines. Moore also admitted that she had been convicted of a crime involving lying, cheating, or stealing in the past.

The jury found Moore guilty of three counts of uttering a worthless check under Code § 18.2-181, three counts of obtaining money by false pretenses under Code § 18.2-178, and three counts of uttering a forged writing under Code § 18.2-172. She now appeals to this Court.

## II. False Pretenses

Moore's first assignment of error alleges that the trial court erred in denying her motion to strike two of the three obtaining money by false pretenses charges pursuant to the single larceny doctrine, because she simultaneously deposited all three money orders. The Commonwealth argues that Moore's motion to strike the evidence on these charges lacked sufficient specificity to preserve this issue for appellate review. However, even if we assume without deciding that Moore's inartful objection properly preserved this point for our consideration, we nevertheless affirm the trial court on this issue.[3]

When the sufficiency of the evidence is challenged on appeal, "'[a]n appellate court must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably

---

[3] In Moore's motion to strike, her counsel argued,

> that there was only one act of presentment. And so if the presentment – I guess it's in the transaction at the teller's window is what the Commonwealth's [sic] is focusing on to sustain this charge, there was only one act, and I would ask that the additional two charges be struck. I guess I would use the single larceny doctrine as my theory to support that.

deducible therefrom.'" Acey v. Commonwealth, 29 Va. App. 240, 244-45, 511 S.E.2d 429, 431 (1999) (quoting Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993)). Further, "[t]he trial court's judgment will not be set aside unless it appears that the judgment is plainly wrong or without supporting evidence."[4] Shropshire v. Commonwealth, 40 Va. App. 34, 38, 577 S.E.2d 521, 523 (2003).

The premise of the single larceny doctrine is that "[a] series of larcenous acts will be considered a single count of larceny if they 'are done pursuant to a single impulse and in execution of a general fraudulent scheme.'" Acey, 29 Va. App. at 247, 511 S.E.2d at 432 (quoting West v. Commonwealth, 125 Va. 747, 754, 99 S.E. 654, 656 (1919)). The application of the doctrine is a fact specific analysis. When deciding whether the single larceny doctrine applies to a particular case, a court must consider "(1) the location of the items taken, (2) the lapse of time between the takings, (3) the general and specific intent of the taker, (4) the number of owners of the items taken and (5) whether intervening events occurred between the takings." Id. However, "'[t]he primary factor to be considered is the intent of the thief . . . .'" Id. (quoting Richardson v. Commonwealth, 25 Va. App. 491, 497, 489 S.E.2d 697, 700 (1997)).

Moore contends that the facts of this case are analogous to those in West, 125 Va. 747, 99 S.E. 654, and therefore, we should find that the single larceny doctrine applies in this case. In West, the defendant was employed as a "cook and housegirl" in the victim's home. Id. at 752, 99 S.E. at 655. The defendant stole dishes and other small articles, including the contents of a "treasure trunk." Id. at 752-53, 99 S.E. at 655. The victim could not say for certain when the

---

[4] Moore contends that this assignment of error should be considered under an abuse of discretion standard. However, Moore is challenging the denials of her motion to strike the evidence and her renewed motion to strike, and thus the appropriate standard of review requires this Court to uphold the judgment of the trial court unless it is plainly wrong or without evidence to support it.

items were taken; however, she supposed it occurred during a three-day period in which she was out of the house. Id. at 753, 99 S.E. at 656.

Based on these facts, the Virginia Supreme Court held that a jury instruction that embodied the single larceny doctrine was proper, noting that

> the general rule is that the taking of property at different times, though from the same place and the same owner, will constitute separate offenses; and no aggregation of successive petit larcenies, not constituting parts of a continuous transaction, but each complete and distinct in itself, can be combined in one prosecution so as to make a case of grand larceny.
>
> But a series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.

Id. at 754, 99 S.E. at 656 (internal citations omitted). The Court in West reasoned that the facts of the case were sufficient "to warrant the inference that [the defendant] took the contents of the trunk under a single impulse, and that whether [the defendant] removed them in parcels or as a whole, [the defendant] was simply carrying out a general purpose to steal them all." Id. at 754-55, 99 S.E. at 656.

However, the facts of West are very different from the facts in the present case. An analysis of the Acey factors illustrates the disparity.[5] Here, it is true that the location of the withdrawals was the same. Further, the victims are Apple and its members. However, the most important element in a single larceny analysis is Moore's intent. Here, Moore took the money by

---

[5] We note that in the case of the offense of larceny by false pretenses, a larceny takes place at the time of the taking. See Acey, 29 Va. App. at 247, 511 S.E.2d at 432. Thus, our analysis is properly based upon the facts and circumstances of the withdrawals instead of those surrounding the deposit as Moore argues.

making seven separate withdrawals over an eight-day span. She then used the money to pay fines, purchase a car, and to "buy little things here and there."

Bragg v. Commonwealth, 42 Va. App. 607, 593 S.E.2d 558 (2004), guides our analysis. In Bragg, the defendant embezzled money from his church over a twenty-five-month period. Id. at 612, 593 S.E.2d at 560. He used the money to pay off personal debts, including his mortgage, car loan, and phone bill. Id. at 609, 593 S.E.2d at 559. He also gave a friend $750 and took the friend on a trip to Israel, costing $3,572. Id. at 610, 593 S.E.2d at 559.

Bragg was convicted of five counts of embezzlement. On appeal, he argued that the charges should have been reduced to a single charge under the single larceny doctrine. Although this Court left open the question of whether the single larceny doctrine applied to the crime of embezzlement, we nevertheless concluded that even if the doctrine was applicable, the facts of the case did not satisfy the requirements of the doctrine. Id. at 611, 593 S.E.2d at 560. We reasoned that the defendant

> did not intend to continue taking money from the church. Only when a debt arose that [the defendant] could not pay from his own income would he cash a check from the church. After paying that debt, [the defendant] had no intention to embezzle again. These debts were intervening acts that created individualized intentions to embezzle.
>
> Further, the trial court properly concluded that [the defendant], by using the funds for making gifts to third parties, evidenced a series of single impulses. [The defendant's] bills for computer services, his extravagant gifts, and his international trip rebutted any general and continuing need for basic living expenses.

Id. at 613-14, 593 S.E.2d at 561.

Here, the evidence presented supports the Commonwealth's theory that Moore acted under a series of single impulses. Although Moore's withdrawals took place over a much shorter time period than the period in Bragg, her sporadic withdrawal pattern combined with her testimony that she used the money to pay fines and purchase a car and other things "here and

there" is evidence that she acted under "a series of single impulses." Id. Thus, it is clear the jury could have concluded that the single larceny doctrine does not apply to the facts of this case, and the trial court did not err in denying Moore's motion to strike the evidence.

### III. Issuing Multiple Checks

Moore was indicted by the grand jury for a myriad of offenses, including one count of issuing multiple worthless checks under Code § 18.2-181.1 and three counts of worthless checks under Code § 18.2-181. At trial, the Commonwealth opted to move to *nolle prosequi* the one indictment for issuing multiple worthless checks, and instead proceed under the three individual indictments for uttering worthless checks. The trial court granted the motion over Moore's objection, and Moore was ultimately convicted of each of the three worthless check charges. On appeal, Moore contends that, because the prosecutor offered no reason, and because it made no finding that "good cause" existed to do so, the trial court erred by granting the Commonwealth's motion to *nolle prosequi* the single issuing multiple worthless checks charge and allowing it to proceed under the three separate worthless check charges.

In Virginia, a *nolle prosequi* is regulated by statute, and "shall be entered only in the discretion of the court, upon motion of the Commonwealth with good cause therefor shown." Code § 19.2-265.3. The express language of the statute commits a finding of good cause to the discretion of the trial court. Harris v. Commonwealth, 258 Va. 576, 583, 520 S.E.2d 825, 829 (1999). In Duggins v. Commonwealth, __ Va. App. __, __ S.E.2d __ (this day decided), we noted the presumption that a trial court has properly followed the law and declined to hold that a subsequent prosecution was absolutely barred merely because the record did not reflect any affirmative finding of "good cause" for an earlier *nolle prosequi* of the same charges. Other jurisdictions have noted that under the common law, a prosecutor had unlimited discretion to enter a *nolle prosequi* without any court involvement. See United States v. Nixon, 418 U.S. 683,

693 (1974) ("[The] Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case" in the first instance. (citing United States v. Cox, 342 F.2d 167 (5th Cir.) (en banc), cert. denied, 381 U.S. 935 (1965))); Commonwealth v. Gordon, 574 N.E.2d 974, 975 (Mass. 1991) ("[T]he decision to *nol pros* a criminal case is within the discretion of the executive branch of government, free from judicial intervention."); see also Commonwealth v. Hart, 20 N.E. 310, 310 (Mass. 1889) ("Only an attorney authorized by the Commonwealth to represent it has authority to declare he will not further prosecute a case in [sic] behalf of the Commonwealth. A court is not a prosecuting officer . . . . Its office is judicial, -- to hear and determine between the Commonwealth and the defendant."); Commonwealth v. Andrews, 2 Mass. 409, 414 (1807); State v. Mucci, 782 N.E.2d 133, 139 (Ohio App. 2002); United States v. N.V. Nederlandsche Combinatie vor Chemische Industrie, 75 F.R.D. 473, 475 (S.D. N.Y. 1977).

However, legislatures and courts of various jurisdictions, including the Commonwealth and the federal government, have acted to curtail this unlimited discretion the prosecution had to the extent that it applies post-indictment. See Anonymous, 3 Va. (1 Va. Cas.) 139, 139 (1803); see also Mucci, 782 N.E.2d at 139; 1944 Advisory Committee Notes to Fed. Crim. R. 48(a). Therefore, where a statute or rule of court limits a prosecutor's unlimited post-indictment discretion to enter a *nolle prosequi,* it acts as a check and balance to the discretion of a prosecutor to dismiss an indictment. Mucci, 782 N.E.2d at 139. Such rules and statutes have been promulgated and enacted in order to curb abuses of executive prerogative and to protect a defendant from harassment by government through charging, dismissing, and then re-charging without placing a defendant in jeopardy. Id.; Woodring v. United States, 311 F.2d 417, 423 (8th Cir.), cert. denied, 373 U.S. 913 (1963). However, due to separation of powers considerations, the power to require "good cause" is generally exercised with great caution by courts. For example, in Rinaldi v. United States, 434 U.S. 22, 29 (1977), the Supreme Court of the United

States, citing United States v. Cowan, 524 F.2d 504, 507-13 (5th Cir. 1975), cert. denied, 425 U.S. 971 (1976), held that the district court could not deny leave to dismiss an indictment unless "the Government's decision to terminate [the] prosecution clearly disserved the public interest . . . ."

The Virginia Supreme Court addressed the "good cause" required for a *nolle prosequi* in Harris v. Commonwealth, 258 Va. 576, 583-85, 520 S.E.2d 825, 829-30 (1999). In that case, the Commonwealth sought continuance of a trial, based in part on lack of preparation by the prosecutor and partly on factors beyond his control. Id. The motion for a continuance was denied, and the Commonwealth moved to *nolle prosequi* the case, which motion was granted. The defendant challenged that decision, and the Court observed that the "express language of the statute commits a finding of good cause to the discretion of the trial court." Id. Noting that the basis for the motion was, in part, the failure of the Commonwealth to adequately prepare its case, the Court stated that, where such lack of preparation was coupled with factors beyond the Commonwealth's control, it "*does not demonstrate bad faith on the Commonwealth's part. Nor does the decision of the Commonwealth to seek a nolle prosequi rise to the level of oppressive tactics amounting to prosecutorial misconduct in this instance.*" Id. at 584, 520 S.E.2d at 830 (emphasis added); see United States v. Wallace, 848 F.2d 1464, 1468 (9th Cir. 1988) (recognizing that the fundamental consideration in assessing the propriety of a prosecutor's motion to dismiss is whether the motion is made in good faith).

These cases make clear that the discretion of the trial court in considering a motion to *nolle prosequi* is not unbridled. The terms "bad faith" and "oppressive tactics" used in Harris provide the best summary of situations in which "good cause" does not exist.

In striking the proper balance between the prosecution's discretion to seek a *nolle prosequi* of an indictment and the court's power to prevent abuses of executive prerogative,

- 11 -

courts have recognized that the prosecution is the first and, presumptively, best judge of where the public interest lies, and the trial court should not merely substitute its judgment for that of the prosecution. United States v. Hamm, 638 F.2d 823, 828 (5th Cir. 1981). Some courts have sought to further define the appropriate standard for making such decisions by recognizing that a court should defer to the prosecution's request for a *nolle prosequi* unless to do so would be contrary to the public interest. Id.; Wallace, 848 F.2d at 1468 (recognizing the court's discretion to deny dismissal if the motion is prompted by considerations "clearly contrary" to the public interest). In some cases, as we noted in Duggins, this Court lacks the jurisdiction to directly review a *nolle prosequi*. __ Va. App. at __, __ S.E.2d at __. The jurisdiction of this Court is governed entirely by statute, and Code § 17.1-406(A) limits our appellate jurisdiction in criminal cases to cases involving final orders of conviction.[6] Since a *nolle prosequi* terminates a criminal case without a conviction, it is not directly reviewable by this Court unless, as here, a conviction results on other companion charges.

However, we note that while a *nolle prosequi* will terminate a prosecution as to one or more charges, that is a distinctly different issue analytically from whether there may be statutory or constitutional consequences from the case or charges being brought again at some future time, or as here, contemporaneously but under a different theory of criminal liability. Those consequences are reviewable on appeal. For example, as we noted in Duggins, a constitutional bar to *subsequent* prosecution may be implicated if a *nolle prosequi* is granted after jeopardy attaches, if the speedy trial protections of the Sixth Amendment have been compromised or if the

---

[6] "Any aggrieved party may present a petition for appeal to the Court of Appeals from . . . any final conviction in a circuit court of a traffic infraction or a crime, except where a sentence of death has been imposed . . . ." Code § 17.1-406(A).

defendant has been denied due process through prosecutorial vindictiveness or misconduct.[7] __ Va. App. at __, __ S.E.2d at __.

Striking the proper balance in this area of the law requires careful consideration of the separation of powers doctrine.[8] A review of this constitutional constraint is helpful in defining the proper scope of a court's discretion and deference to a co-equal branch of government in ruling on a prosecutor's motion to *nolle prosequi*. In Cowan, 524 F.2d at 507-13, the Fifth Circuit Court of Appeals closely examined a claim that the separation of powers doctrine provided the prosecution with absolute power to dismiss proceedings. In that case, the government refused to prosecute the charges, and the trial judge appointed a special prosecutor to proceed with the case. The prosecution appealed the trial court's appointment of the special prosecutor. The Cowan court disagreed with the government's assertion that its authority to prosecute or not was absolute and in doing so, meticulously reviewed the considerations implicated by the separation of powers doctrine and concluded:

> The Executive branch remains the absolute judge of whether a prosecution should be initiated in the first instance and the *first and presumptively the best judge* of whether a pending prosecution should be terminated before trial. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless *clearly contrary to manifest public*

[7] This list is not exhaustive and is not meant to exclude other situations of nonconstitutional import in which a prosecutor fails to adhere to the higher professional duty uniquely expected of them. See Berger v. United States, 295 U.S. 78, 88 (1935) ("The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

[8] Like the Constitution of the United States, Article III, Section 1 of the Constitution of Virginia similarly requires that "The legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time . . . ."

> *interest.* In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

Id. at 513 (emphasis added).

While Cowan is not binding on this Court, its sound reasoning and the fact that the United States Supreme Court has cited it with approval suggests that it, in conjunction with our Supreme Court's decision in Harris, provides the proper construct for evaluation of the degree to which the judicial branch should defer to the executive branch on the question of "good cause." Accordingly, in reviewing the Commonwealth's decision to move for *nolle prosequi* of an indictment and given the inter-branch deference required by the separation of powers doctrine, a court should not interfere with the Commonwealth's decision to seek a *nolle prosequi* unless the court determines that the exercise of such discretion is clearly contrary to public interest. [9]

Unlike in Duggins where the prosecutor moved to *nolle prosequi* the indictments and then later brought new indictments against the defendant, Moore had already been indicted for one count of issuing multiple worthless checks under Code § 18.2-181.1 and three counts of worthless checks under Code § 18.2-181.

> Where the evidence supports prosecution under either of two parallel statutes, the Commonwealth has the right to elect under which statute to proceed. Where the circumstances surrounding an offense permit prosecution under either of two statutes, the selection of the statute under which to proceed is a matter of prosecutorial election.

---

[9] In attempting to strike this balance, we expressly do not hold that the failure of a prosecutor to state a reason for requesting a *nolle prosequi* necessitates reinstatement of previously *nolle prosequied* charges or dismissal of companion or subsequent charges, nor should our analysis and holding here be construed by prosecutors as *carte blanche* to request a *nolle prosequi* without providing a trial court with a rationale amounting to "good cause" for doing so. Our holding today recognizes and attempts to navigate and reconcile the procedural complexities and divided responsibilities inherent in judicial oversight of a co-equal branch of government that, by law and custom, is primarily responsible for the initiation and termination of criminal charges but which is not unaccountable in doing so.

Smith v. Commonwealth, 17 Va. App. 37, 41, 434 S.E.2d 914, 916 (1993). "'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" Wolfe v. Commonwealth, 42 Va. App. 776, 780, 595 S.E.2d 27, 29 (2004) (citations omitted).

While the prosecutor in this case offered no reason in support of the motion to *nolle prosequi* the multiple worthless checks indictment, nor was there any specific finding of "good cause" by the trial court, the record before us supports a clear inference that the prosecutor was exercising the Commonwealth's right to elect which of two statutes to proceed under. This decision was within the exclusive province of the executive branch and the courts have no proper role in second guessing that choice and a trial court certainly has no constitutional authority to select the theory of criminal liability upon which the Commonwealth must proceed.

Accordingly, we hold that "good cause" existed as a matter of law to support the circuit court's decision to grant the motion to *nolle prosequi* the indictment for multiple worthless checks.

### IV. Application of the Single Larceny Doctrine

Moore also contends on appeal that, even if it was proper for the Commonwealth to elect to go forward under three separate worthless check charges, that the charges should be reduced to one charge under the single larceny doctrine. However this issue clearly was not preserved for appellate review.

In her motion to strike, Moore argued generally "that the Commonwealth's evidence [was] insufficient as a matter of law to sustain a conviction on each and every charge, and the Commonwealth has failed to make a prime [sic] facie case for each and every charge." With respect to the three worthless check charges, Moore argued only that the Commonwealth failed

- 15 -

to show that she acted with an intent to defraud and that the Commonwealth should not be entitled to a presumption that the defendant acted with an intent to defraud under Rinkov v. Commonwealth, 213 Va. 307, 191 S.E.2d 731 (1972).

Thus, the record demonstrates that Moore never argued, and therefore the trial court never considered, whether the single larceny doctrine should apply to the three worthless check charges. As such, Rule 5A:18 precludes us from considering this argument on appeal.

Even so, Moore asks this Court to invoke the ends of justice exception to Rule 5A:18. The ends of justice exception is narrowly construed.

> To invoke the ends of justice exception to Rule 5A:18, the record must "affirmatively show[] that a miscarriage of justice has occurred, not . . . merely . . . that a miscarriage might have occurred." To satisfy this burden, an appellant must show "more than that the Commonwealth failed to prove an element of the offense . . . . The appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense[,] or the record must affirmatively prove that an element of the offense did not occur."

Marshall v. Commonwealth, 26 Va. App. 627, 636-37, 496 S.E.2d 120, 125 (1998) (quoting Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987); Redman v. Commonwealth, 25 Va. App. 215, 221-22, 487 S.E.2d 269, 272-73 (1997)).

In this case, Moore has failed to demonstrate that she was convicted of conduct that was not criminal or that an element of the offense did not occur. Rather, Moore attempts to invoke this exception to use a common law doctrine to reduce her three convictions to a single conviction. The function of this Court is to review errors of law allegedly made by the trial courts, and exceptions to the requirements of Rule 5A:18 are not designed or intended to permit an appellant to take advantage of hindsight in second guessing their own trial strategy and tactics.

## V. Uttering Forged Checks

Finally, Moore contends that the trial court erred in not applying the single larceny doctrine to her uttering forged checks offenses. Moore argues that, while uttering is not an offense made punishable as larceny, we should nevertheless extend the single larceny doctrine to uttering cases, because the doctrine has been applied to other crimes involving fraud. See generally Millard v. Commonwealth, 34 Va. App. 202, 206, 539 S.E.2d 84, 86 (2000) (extending the single larceny doctrine to the offense of obtaining money by false pretenses).

However, this argument misses the point. As this Court noted in Millard, the single larceny doctrine was developed through the common law. Id. While we extended the doctrine to the offense of obtaining money by false pretenses, in that case we did so because the offense was made larceny by Code § 18.2-178, and we found "no manifest intent by the legislature in Code § 18.2-178 to abrogate common law larceny." Id. However, uttering a forged instrument is not a larceny offense. See Code § 18.2-172. Therefore, we decline to depart from common law principles and extend the single larceny doctrine to the offense of uttering. See also Hines v. Commonwealth, 39 Va. App. 752, 576 S.E.2d 783 (2003) (noting that the single larceny "doctrine has no applicability to non-larceny cases").

## VI. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Kelsey, J., concurring, in part.

I concur in all respects except for the *dicta* in footnotes 7 and 9.  Neither footnote addresses issues necessary to decide this case.