# COURT OF APPEALS OF VIRGINIA

### Record No. 0768-25-4

SHAHEEM TEVON HICKS BROWN, SOMETIMES KNOWN AS
SHAHEEM TEVON HICKS-BROWN
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Raphael, Lorish and Frucci

Opinion Issued May 12, 2026[*]

## FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Angela L. Horan, Judge

(Mark H. Branca; Branca & Sanders, PLLC, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Lindsay M. Brooker, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

Following a jury trial, the circuit court convicted Shaheem Tevon Hicks Brown of two

counts of using a firearm in commission of a felony, two counts of aggravated malicious wounding,

and one count of maliciously discharging a firearm at or within an occupied building. On appeal,

Brown challenges the circuit court's denial of his motion to strike, arguing that the evidence was

insufficient to sustain each of his convictions. He also challenges the circuit court's admission of

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

"video clips from the surveillance camera within the victim's home." For the following reasons, we affirm the circuit court.[2]

BACKGROUND[3]

I. The Offense

On December 9, 2022, D.A.[4] lived with her cousin Brown, her daughter, and her husband. After work that day, D.A. returned home. Brown was home, in the hallway talking on the phone. D.A. noticed that Brown "was a little off," and she believed he had been drinking alcohol that night. Brown was wearing a black jacket, a bulletproof vest, and a ski mask. Believing "he was too messed up to drive," D.A., who had Brown's car keys, refused to give them to Brown. Because of this, Brown called another cousin, R.H., and asked for a ride. Shortly after arriving, R.H. used cocaine with Brown. Brown asked R.H. to go upstairs with him to talk to D.A. about the car keys.

Upstairs, Brown went into D.A.'s room, where she was watching television. As the two talked, Brown "walked in [and] walked out [of the room], like kind of pacing." Brown asked for his keys back, and D.A. refused, telling him to lie down and relax. While D.A. was standing by her bed near the window, she "heard a pop." She then heard more shots and felt that she had been shot. D.A. had in fact been shot by Brown. R.H. "[w]restle[ed Brown] to get the gun from him." Brown

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[4] We use initials rather than names to protect the privacy of victims.

"kept shooting" at R.H.  D.A. then hid and called 911.[5]  R.H. retreated into a separate bedroom and closed the door with his foot.

When police arrived, Brown appeared intoxicated and was downstairs, sitting on the interior steps facing the front door.  At the bottom of the stairs, near the front door, there was a firearm.  When officers saw D.A., she had injuries to her left side and was "covered in blood."  D.A. had been shot in her stomach and back, causing damage to her colon, spleen, pancreas, and kidney.  R.H. was found lying on his back in one of the bedrooms upstairs, and he had been shot in his wrist, arm, and stomach, causing damage to his small intestines and pancreas.  Five cartridges were found upstairs, along with two bullets and additional holes in the west wall.[6]  Brown appeared to have blood on his pants and jacket, and no visible injuries.

II.  Surveillance Video Clips

At trial, seven video clips from a surveillance camera inside D.A.'s home were admitted into evidence over Brown's objection.[7]  D.A. testified that she had the security system at her house and that she had cameras on her front door and in her living room and the hallway.  She explained how it was functioning and in operable condition at the time of the shooting, that it begins to record in response to movement and that its footage is password protected and stored in "the cloud."  She testified that she had not manipulated or altered any of the footage, that nothing was missing from it

---

[5] A portion of this 911 call was entered into evidence at trial.  During a portion of the call, D.A. told the dispatcher that her cousin shot her in the chest.  D.A. also stated that her cousin still had the gun.

[6] Later testing determined that the recovered cartridges had been fired from the recovered firearm.

[7] After watching the video clips, the circuit court instructed the jurors to not take any statement in the clips that were made by anybody other than Brown as proof of the truth of what is being said in those statements.

and that she had provided it to law enforcement. She further confirmed that the video clips were true and accurate depictions of what happened during the shooting.

The first video clip depicted Brown entering D.A.'s room. The second video showed Brown pacing in the hallway outside D.A.'s bedroom and looking at his cell phone. The third clip showed Brown standing in the hallway with a gun in his hand, looking into D.A.'s room. The fourth clip showed Brown standing outside D.A.'s room with a gun in one hand and his phone in another, talking to an unidentified woman and telling her things like: "I'm done," "Fuck this shit," "There's no fucking way, bruh," and "Y'all want me to go outside so they can kill me, huh?" The fifth clip showed Brown in the hallway with the gun still talking to the woman and saying, "I'm going through too much, bro," when R.H. walked from inside the bedroom to the doorway, and Brown repeatedly told him, "Get away from me, bro," before R.H. walked back into the bedroom. The sixth clip showed Brown firing the firearm into D.A.'s bedroom from the hallway, then walking into the bedroom and continuing to fire, before R.H. began trying to wrestle the gun from him. The final clip showed Brown hitting R.H. with the firearm before R.H. pushed Brown down the stairs, and retreated into the second bedroom and closed the door. At the end of the final clip, Brown begins to ascend the stairs.

III. Motions to Strike

After the Commonwealth rested, Brown moved to strike the charges, arguing, in part, that there was insufficient evidence of malice and the intent to maim, disfigure, or disable. Brown did not present any evidence and renewed his motion to strike, which the circuit court denied. Ultimately, Brown was convicted of two counts of using a firearm in commission of a felony, two counts of aggravated malicious wounding, and one count of maliciously discharging a firearm at or within an occupied building. Brown appeals.

ANALYSIS

I. Motions to Strike

Brown argues that the circuit court erred by denying his motions to strike the evidence. "A motion to strike challenges whether the evidence is sufficient to submit the case to the [factfinder]." *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013). When faced with a challenge to the sufficiency of the evidence, "we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). When reviewing a circuit court's denial of a motion to strike, this Court will "uphold the judgment of the [circuit] court unless it is plainly wrong or without evidence to support it." *Moore v. Commonwealth*, 59 Va. App. 795, 804 n.4 (2012).

Brown contends that the evidence was insufficient to prove that he acted with malice, a requirement for both aggravated malicious wounding and malicious shooting within an occupied building. *See* Code §§ 18.2-51.2 and 18.2-279. He also states that the evidence was insufficient to prove he intended to maim, disfigure, or disable D.A. and R.H., a requirement for the aggravated malicious wounding convictions.

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Doss v. Commonwealth*, 23 Va. App. 679, 685 (1996) (quoting *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993)). The presence or absence of malice is a question of fact to be determined by the trier of fact. *Meade v. Commonwealth*, 74 Va. App. 796, 814 (2022). "Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances, including the 'words or conduct' of the alleged offender." *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) (quoting *Secret v. Commonwealth*, 296

Va. 204, 228-29 (2018)), *aff'd*, 303 Va. 1 (2024). "[T]he fact finder is often allowed broad latitude in determining the specific intent of the actor." *Fortune v. Commonwealth*, 14 Va. App. 225, 229 (1992). Indeed, "[i]ntent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)).

"In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Id.* (alteration in original) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). It is well established that "[a] person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act." *Holley v. Commonwealth*, 44 Va. App. 228, 234 (2004) (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)). "[M]alice may be inferred 'from the deliberate use of a deadly weapon.'" *Smith v. Commonwealth*, 68 Va. App. 399, 417 (2018) (quoting *Knight v. Commonwealth*, 61 Va. App. 148, 156 (2012)). Further, a defendant's deliberate use of a firearm, combined with his conduct and statements before and after a shooting, may be sufficient to prove he possessed the requisite intent. *Cuffee v. Commonwealth*, 61 Va. App. 353, 370-71 (2013).

Here, the record demonstrates that Brown argued with D.A. about his keys shortly before shooting her in the chest with a deadly weapon. Brown fired his weapon numerous times at her. After R.H. attempted to intervene and wrestle the weapon away from Brown, Brown continued to attack, shooting R.H. numerous times. In sum, the evidence sufficed to prove that Brown

- 6 -

acted maliciously and intended to maim, disfigure, or disable D.A. and R.H.[8]  Accordingly, the

circuit court did not err by denying Brown's motions to strike.

II.  Surveillance Video Clips

Brown also contends that the circuit court erred in admitting clips of the surveillance

footage captured by motion-activated cameras affixed within D.A.'s home.  He summarily states

that "the Commonwealth failed to lay adequate foundation to authenticate the series of . . . clips"

and takes issue with "the series of video clips [being] not continuous [with] parts of the video . . .

missing."

"When reviewing a [circuit] court's decision to admit or exclude evidence, we apply an

abuse of discretion standard."  *Bista v. Commonwealth*, 303 Va. 354, 370 (2024).  "In this

context, 'we do not substitute our judgment for that of the trial court.  Rather, we consider only

whether the record fairly supports the trial court's action.'"  *Id.* (quoting *Kenner v.*

*Commonwealth*, 299 Va. 414, 423 (2021)).  "Only when reasonable jurists could not differ can

we say an abuse of discretion has occurred."  *Barney*, 302 Va. at 94 (quoting *Grattan v.*

*Commonwealth*, 278 Va. 602, 620 (2009)).  A videotape is properly authenticated if

---

[8] Brown also argues that the evidence was insufficient to sustain his use of a firearm in commission of a felony and maliciously shooting at or within an occupied building convictions because the officer who handed the firearm to the Department of Forensic Science could not recall the name of the employee that he handed the firearm to.  Generally, an argument regarding the chain of custody arises in the context of an objection to the admissibility of evidence.  *See, e.g., Crews v. Commonwealth*, 18 Va. App. 115 (1994).  However, in the case at hand, Brown presented the question to the circuit court for the first time in his motion to strike—thus, presenting the circuit court with a different question than admissibility, that being whether the evidence was sufficient to prove an element of the offenses.  There was sufficient credible evidence for the jury to find that Brown used a firearm while committing a felony and shot the firearm in an occupied building, despite the absence of testimony about who the firearm was specifically given to at the Department of Forensic Science.  Both D.A. and R.H. testified to being shot by the firearm Brown possessed, surveillance clips showed him firing a firearm in the occupied building, and officers testified about recovering a firearm and the process they underwent to secure it.

accompanied "by evidence sufficient to support a finding that the thing in question is what its proponent claims."  Va. R. Evid. 2:901.

Here, D.A., who maintained the motion-activated devices, testified to the production and accuracy of the clips.  Further, she testified that nothing was missing from the footage and that the clips were true and accurate depictions of what she saw happen during the shooting.  Accepting this testimony as true provided the circuit court with sufficient evidence to find that the footage was what it was claimed to be: an accurate recording of the shooting.  Thus, the circuit court did not abuse its discretion in admitting the surveillance video clips.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*