OPINION
{¶ 1} Appellant, Timothy B. Neely, appeals from judgment entries of the Lake County Court of Common Pleas, denying his motion to suppress and convicting him on two counts of aggravated vehicular homicide, leaving the scene of an accident, driving under the influence, and driving with a prohibited concentration of alcohol in bodily substances. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.
 {¶ 2} On December 22, 2001, the Lake County Grand Jury indicted appellant on the following charges: (1) aggravated vehicular homicide, a second degree felony in violation of R.C.2903.06(A)(1); (2) aggravated vehicular homicide, a third degree felony in violation of R.C. 2903.06(A)(2); (3) leaving the scene of an accident, a fifth degree felony in violation of R.C.4549.02 and 4549.99(B); (4) driving under the influence ("DUI"), a first degree misdemeanor in violation of R.C. 4511.19(A)(1); and (5) driving with a prohibited concentration of alcohol in bodily substances, a first degree misdemeanor in violation of R.C. 4511.19(A)(1)(f). Appellant pleaded not guilty to the foregoing charges.
 {¶ 3} The indictment charges arose from appellant allegedly striking and killing a pedestrian in Lake County, while driving his Ford pickup truck under the influence of drugs and alcohol. Appellant filed a motion to suppress, moving to exclude any evidence relating to a blood draw that was taken subsequent to the accident. The blood draw was taken at Geneva Memorial Hospital, in Ashtabula County. Appellant argued that this evidence should be suppressed because the blood was drawn without his consent, the blood was drawn outside of Lake County, and the blood was not drawn within two hours of the accident. He further maintained that the blood draw results should be excluded because the disclosure of such evidence would violate the Health Insurance Portability and Accountability Act ("HIPPA").
 {¶ 4} The court held a suppression hearing. Sergeant William Barson ("Sgt. Barson"), of the Madison Township Police Department, testified that he received a radio dispatch at 3:45 a.m., which reported a pedestrian had been struck by a vehicle. Sgt. Barson arrived at the scene of the accident at approximately 4:00 a.m. He testified that appellant and his father were at the scene when he arrived. Appellant's pickup truck, however, was not at the scene of the accident. Sgt. Barson approached appellant and began to question him with respect to the circumstances of the accident. Appellant told Sgt. Barson that the accident occurred at approximately 3:30 a.m.
 {¶ 5} As appellant attempted to answer questions, Sgt. Barson noted appellant's blood shot eyes, slurred speech, and difficulty maintaining balance. Sgt. Barson suspected that appellant was under the influence of drugs and alcohol. Accordingly, he requested that appellant take field sobriety tests. Appellant refused to attempt the field sobriety tests. Sgt. Barson then placed appellant under arrest for driving under the influence.
 {¶ 6} Sgt. Barson testified that appellant was transported from the accident scene to the police station. At the police station, appellant refused to take a breathalyzer test. Knowing that time was of the essence, Sgt. Barson drove appellant to Geneva Memorial Hospital, in Ashtabula County, as it was the closest hospital, to obtain a blood draw.
 {¶ 7} Brian Winston, Jr. ("Brian"), a medical laboratory technologist at Geneva Memorial, testified that he extracted a blood draw from appellant a couple minutes before 5:25 a.m. Hospital documentation verified Brian's testimony. Brian testified that he would never extract blood from an individual who refused consent either verbally or physically. Sgt. Barson also testified that appellant consented to the blood draw.
 {¶ 8} Sgt. Barson provided additional testimony with respect to the time of the accident. This evidence clearly demonstrated that the accident occurred well before 3:30 a.m. Specifically, he testified that the radio dispatch informed him that the accident was reported at 3:15 a.m. However, Sgt. Barson further testified that appellant told him that the accident was not immediately reported. Instead, appellant admitted that after he hit the pedestrian, he drove to his house, which was approximately a mile and a half from the scene of the accident. Appellant proceeded to call his father and inform him of the accident. He then drove his truck to his father's house, retrieved a flashlight, and returned with his father to the accident scene in a different vehicle, leaving the truck at his father's house.
 {¶ 9} The trial court denied appellant's motion to suppress. Specifically, the court found "the police did not exceed their statutory jurisdiction in arresting [appellant], or transporting him to Geneva Memorial hospital; * * * the police did not violate [appellant's] rights by taking him to another county to have a blood sample collected; * * * HIPPA was not applicable to the withdrawal of [appellant's] blood, and even if applicable the withdrawal constituted an exception to the prohibition against disclosure as a disclosure required by law[.]"
 {¶ 10} At jury voir dire, the trial court conducted a side-bar. During the side-bar, the prosecution mentioned its intent to dismiss the charge of driving with a prohibited concentration of alcohol in bodily substances, because the blood draw did not occur within two hours of the accident. However, the state delayed its dismissal request until trial. On the day of trial, the court rejected the state's dismissal request. The court reasoned that due to conflicting evidence as to when the accident occurred, a dismissal prior to trial on this charge would be inappropriate.
 {¶ 11} This matter proceeded to a jury trial and the following facts were revealed. On September 20, 2003, appellant struck and killed a pedestrian while driving his pickup truck home from a tavern called Mixed Nuts. The pedestrian was walking home from the same tavern when he was struck and killed.
 {¶ 12} During Sgt. Barson's questioning, appellant initially stated that he didn't know what his truck had hit. But he later informed Sgt. Barson that the pedestrian had jumped in front of his truck.
 {¶ 13} Expert witness testimony established that the pedestrian had a blood alcohol level of .128. Based upon the results of appellant's blood draw, appellant had a blood alcohol level of .23 at the time of the blood draw. The blood draw results and expert witness testimony further demonstrated that appellant had ingested cocaine while consuming alcohol.
 {¶ 14} The state presented the testimony of Dale Dent ("Dale"), an accident reconstructionist. Based upon his reconstruction, Dale testified that the right front fender (passenger side) of appellant's truck struck the left side of the pedestrian's back. Fabric smears from the pedestrian's clothing, found on appellant's vehicle, corroborated this testimony. However, Dale stated that he could not determine where the pedestrian was standing or walking on the road at the time of impact.
 {¶ 15} The defense called Donald Dzina ("Donald") as a witness. Donald testified that he was an employee of Mixed Nuts and was working the night of the accident. The defense attempted to elicit statements made by the pedestrian to Donald, just before the accident. The state objected to the testimony as hearsay.
 {¶ 16} Appellant's defense counsel explained that Donald's testimony would reveal that the pedestrian had stated he was intending to commit suicide, just prior to the accident. Defense counsel maintained that the statement made by the pedestrian was admissible hearsay. The trial court sustained the state's objection.
 {¶ 17} The court did, however, allow appellant to proffer Donald's testimony. Donald's proffered testimony revealed that the pedestrian "was talking about committing suicide" just prior to the accident. His proffered testimony further established that the pedestrian was contemplating suicide because he was despondent about his divorce.
 {¶ 18} At the close of the state's case, and again at the close of appellant's case, appellant moved to dismiss all charges. The court denied both motions to dismiss.
 {¶ 19} Following the close of trial, the jury returned a verdict of guilty on all charges. The trial court proceeded to enter judgment accordingly, thereby convicting appellant on all charges. The court then sentenced appellant to an aggregate prison term of seven years and eleven months.
 {¶ 20} From this judgment, appellant has filed a timely notice of appeal and now sets forth the following five assignments of error:
 {¶ 21} "[1.] The trial court erred to the prejudice of the appellant when it overruled appellant's motion to suppress/dismiss.
 {¶ 22} "[2.] The trial court erred to the prejudice of the appellant when it did not dismiss count five of the indictment, the driving with a prohibited concentration of alcohol in bodily substances.
 {¶ 23} "[3.] The trial court erred to the prejudice of the appellant when it did not permit the appellant to present evidence that the victim was suicidal and stepped in front of appellant's vehicle in the commission of suicide.
 {¶ 24} "[4.] The trial court erred to the prejudice of the appellant when it did not grant appellant's Rule 29 motion, as there was insufficient evidence by which to convict appellant.
 {¶ 25} "[5.] The jury's finding that appellant was guilty of two counts of aggravated vehicular homicide, one count of leaving the scene of an accident, one count of driving under the influence of alcohol or drugs, and one count of driving with a prohibited concentration of alcohol in bodily substances was against the manifest weight of the evidence."
 {¶ 26} Appellant's first assignment of error challenges the trial court's denial of his motion to suppress. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 27} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592.
 {¶ 28} The first issue appellant presents for our review contends that evidence of the blood draw should have been suppressed because the blood was drawn outside of Lake County. Appellant maintains that Sgt. Barson did not have jurisdictional authority, per R.C. 2935.03(D), to procure a blood draw from Geneva Memorial, as it was located in Ashtabula County.
 {¶ 29} R.C. 2935.03(D) provides a police officer with the statutory authority to "pursue, arrest, and detain" an individual "outside the limits" of the police officer's jurisdiction, when certain statutory prerequisites have been satisfied.
 {¶ 30} Here, R.C. 2935.03(D) is clearly inapplicable. The facts demonstrated that there was no pursuit involved and appellant was already under arrest when he was transported to Ashtabula County for the blood draw. Appellant fails to point to any statutory authority or case law which would prohibit a police officer from transporting an individual, who is in custody, out of the officer's jurisdiction to obtain a blood draw. And this court is not aware of any legal authority that would support appellant's argument. This portion of appellant's first assignment of error is not well-taken.
 {¶ 31} Next appellant asserts that the blood draw violated his rights under the Fourth Amendment to the United States Constitution because he did not consent to the blood draw. As a result appellant concludes that any evidence relating to the blood draw should be suppressed.
 {¶ 32} The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons * * * against unreasonable searches and seizures." The "overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarrranted intrusion by the State." Schmerber v. California (1966), 384 U.S. 757, 767.
 {¶ 33} The withdrawal of a blood sample from an individual's body to determine blood-alcohol content for the purpose of proving a criminal charge constitutes a search within the meaning of the Fourth Amendment. Id. at 767. See, also, State v. Sisler
(1996), 114 Ohio App.3d 337, 341. A Fourth Amendment analysis neither allows nor prohibits all such bodily intrusions; rather, "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber at 768.
 {¶ 34} An individual's consent establishes a justification for a warrantless blood draw. Specifically, "a suspect, upon request of a police officer, may voluntarily consent to submit to a blood test to determine the concentration of alcohol in his or her blood. Such consent constitutes actual consent[.]" Fairfieldv. Regner (1985), 23 Ohio App.3d 79, 85.
 {¶ 35} In the instant case, the evidence demonstrated that appellant had consented to Sgt. Barson's request for a blood draw. Specifically, when appellant was informed of the blood draw request appellant stated "O.K." Also, Brian, the laboratory technologist, testified that although he could not specifically remember appellant's blood draw, he did not draw blood unless consent was given. See, e.g., State v. Abott, 12th Dist. No. CA2001-10-093, 2002-Ohio-6278, (Laboratory technologist's statement that she did not perform blood draws without prior consent was adequate evidence to demonstrate that the defendant consented to the blood draw.). Absent was any evidence that appellant refused consent.
 {¶ 36} Thus, based upon the evidence provided at the suppression hearing, appellant's consent justified the blood draw, and this portion of appellant's first assignment of error is not well-taken.
 {¶ 37} Appellant further asserts that the blood draw results should have been suppressed under HIPPA. Appellant presents the novel argument that because he did not sign a consent to release form, pursuant to HIPPA, the results of his blood draw could not be disclosed.
 {¶ 38} As the trial court aptly noted, HIPPA provides that health care providers may not disclose protected health information except under certain exceptions provided under HIPPA. Section 164.502, Title 45, C.F.R. Protected health information is defined as individually identifiable health information that is transmitted or maintained in electronic media or any other form. Section 164.103, Title 45, C.F.R. In turn, "health information means any information, whether oral or recorded in any form or medium, that * * * [i]s created or received by a health care provider * * * and * * * [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." Section 160.03, Title 45, C.F.R.
 {¶ 39} Here, Geneva Memorial is a health care provider as contemplated by HIPPA. However, appellant's blood draw was not procured for the purpose of obtaining health care, diagnosis, or medical advice. To the contrary, appellant's blood was extracted for the sole purpose of investigating possible criminal activity. As a result, the blood draw does not relate to a health condition, provision of health care, or payment for the provision of health care, as established by HIPPA. Clearly, HIPPA was not intended to prohibit the disclosure of a blood draw test result that was taken as part of a criminal investigation, which included the offender's consent to the blood draw. Therefore, HIPPA's general prohibition against disclosure of "health information" is not applicable to the case at bar.
 {¶ 40} Appellant's first assignment of error is without merit.
 {¶ 41} Appellant's second assignment of error contends that the trial court abused its discretion by not dismissing the count of driving with a prohibited concentration of alcohol in bodily substances. He argues that the trial court erred by refusing to accept the state's dismissal request prior to trial, as there was sufficient good cause for a dismissal.
 {¶ 42} At one time, a prosecutor had unlimited post-indictment discretion to dismiss a criminal charge without any court involvement; "however, the legislators and courts of this state and the federal government have acted to take this unlimited post-indictment discretion away from the prosecutor."State v. Mucci, 150 Ohio App.3d 493, 2002-Ohio-6896, at ¶ 28. As a result, we must determine whether the trial court's decision to reject the state's dismissal request of driving with a prohibited concentration of alcohol in bodily substances represented an abuse of discretion. Id. at ¶ 30. An abuse of discretion is present when the trial court's decision was unreasonable, unconscionable, or arbitrary. State v. Adams
(1980), 62 Ohio St.2d 107, 109.
 {¶ 43} Pursuant to Crim.R. 48(A), "[t]he state may by leaveof court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate." (Emphasis added.) Likewise, R.C. 2941.33
provides that "[t]he prosecuting attorney shall not enter a nolle prosequi in any case without leave of the court, on good causeshown, in open court. A nolle prosequi entered contrary to this section is unlawful." (Emphasis added.) Good cause is defined as a substantial reason for dismissal and one that affords a legal excuse. State v. Jarvis, 11th Dist. No. 97-P-0101, 1998 Ohio App. LEXIS 6156, at 12.
 {¶ 44} R.C. 4511.19(A)(1)(f) governs the violation of driving with a prohibited concentration of alcohol in bodily substances and provides as follows:
 {¶ 45} "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 {¶ 46} "* * *
 {¶ 47} "The person has a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood."
 {¶ 48} Here, the results of appellant's blood draw established an alcohol content level of .23, which is above the statutory limit promulgated by R.C. 4511.19(A)(1)(f). However, R.C. 4511.19(D)(1) states:
 {¶ 49} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * *, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of thealleged violation." (Emphasis added.)
 {¶ 50} In Newark v. Lucas (1988), 40 Ohio St.3d 100, paragraph one of the syllabus, the Ohio Supreme Court held that the results of a blood draw, in relation to the offense of driving with a prohibited concentration of alcohol in bodily substances, were admissible only when the draw occurred within two hours of the alleged violation. Accordingly, if the evidence before the trial court established that appellant's blood draw occurred outside this two-hour time frame, then the results must be excluded as to the offense of driving with a prohibited concentration of alcohol in bodily substances. Without the test results, it could not be shown that appellant violated R.C.4511.19(A)(1)(f), and good cause would be established to grant the state's dismissal request.
 {¶ 51} In the instant case, the court rejected the state's dismissal request, noting that there was conflicting evidence with respect to what time the accident occurred. The court stated that appellant informed Sgt. Barson that the accident occurred at approximately 3:30 a.m., which could place the 5:25 a.m. blood draw within the mandatory two-hour time frame. However, the court further noted that additional evidence showed that the accident occurred before 3:25 a.m., thereby placing the blood draw outside of the two-hour time limit. Based upon this conflict, the court denied the state's request for a dismissal.
 {¶ 52} After a thorough examination of the relevant evidence which was before the trial court, we hold that good cause for a dismissal was shown. Thus, the trial court abused its discretion by rejecting the state's dismissal request.
 {¶ 53} The trial court relied solely upon appellant's initial statement to Sgt. Barson as evidence that the blood draw occurred within the two-hour time limit. However, on direct-examination by the state, Sgt. Barson provided further testimony of facts which rendered appellant's initial self-serving statement implausible. Namely, Sgt. Barson testified that the accident was first reported to dispatch at 3:15 a.m. This evidence, standing alone, established that the blood draw, which occurred just before 5:25 a.m, was taken beyond the two-hour time limitation.
 {¶ 54} In addition, it was undisputed that appellant failed to immediately report the accident. Instead, appellant drove home, contacted his father, drove to his father's house, returned to the scene of the accident with his father, and then the accident was reported. These events were verified by the presence of appellant's father at the scene of the accident and the absence of appellant's truck. Thus, the evidence affirmatively established that the accident occurred before 3:15 a.m.
 {¶ 55} Moreover, during trial, a coroner's report was admitted as an exhibit. The report recorded the pedestrian's time of death as between 2:00 a.m. and 3:00 a.m. Unfortunately, the trial court did not have the opportunity to examine this evidence when the state moved to dismiss the count. If the coroner's report had been brought to the court's attention, a dismissal would have been more likely as this evidence further establishes that the blood draw occurred outside of the two-hour time limit.
 {¶ 56} That being said, the trial court erred in rejecting the state's dismissal request, as sufficient good cause was present. Good cause was established by evidence which demonstrated that the blood draw was taken more than two hours after the accident occurred. As a result, the court should have dismissed the charge of driving with a prohibited concentration level of alcohol in bodily substances, as there was a substantial reason for dismissal and one that affords a legal excuse.
 {¶ 57} Appellant's second assignment of error is with merit.
 {¶ 58} As a brief aside, we note that although the blood draw test results were inadmissible with respect to the charge of driving with a prohibited concentration level of alcohol in bodily substances, the results were admissible as to the DUI charge. In Lucas the Court stated, "[i]n a criminal prosecution * * * relating to operating a motor vehicle while under the influence of alcohol * * * the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation." Id. at paragraph two of the syllabus. Thus, the blood draw test results were admissible as to appellant's DUI charge.
 {¶ 59} Under his third assignment of error, appellant argues that the trial court abused its discretion by precluding him from presenting Donald's testimony that the pedestrian stated he was contemplating suicide just prior to the accident. Appellant maintains that the state of mind hearsay exception of Evid.R. 803(3) was applicable and, therefore, Donald's testimony was admissible hearsay. We agree.
 {¶ 60} The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion. State v. Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, at ¶ 20, citing Renfro v. Black (1990),52 Ohio St.3d 27, 32. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Montgomery (1991), 61 Ohio St.3d 410, 413.
 {¶ 61} Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Pursuant to Evid.R. 802, to be admissible the hearsay evidence must come within one of the exceptions under Evid.R. 803 and 804.
 {¶ 62} Evid.R. 803(3) provides the following exception:
 {¶ 63} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 64} "* * *
 {¶ 65} "Then existing, mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."
 {¶ 66} An out-of-court statement about a declarant's then-existing mental state is considered trustworthy admissible hearsay due to its spontaneity. State v. Miller,96 Ohio St.3d 384, 2002-Ohio-4931, at ¶ 46. But to qualify as an exception under Evid.R. 803(3), the declarant's out-of-court statement must refer to a then-existing state of mind, rather than a past state of mind. Id. at ¶ 46. Moreover, a declarant's statement which looks forward to some act and expresses an intent to carry out some act in the future is admissible under Evid.R. 803(3). See, e.g., State v. O'Neal, 87 Ohio St.3d 402, 412, 2000-Ohio-449;State v. Sage (1987), 31 Ohio St.3d 173, 182-183.
 {¶ 67} Despite the admissibility of hearsay statements under the state of mind exception, the Ohio Supreme Court has limited the scope of admissibility under this exception. In State v.Apanovitch (1987), 33 Ohio St.3d 19, 21, the Court held that the state of mind exception "does not permit witnesses to relate any of the declarant's statements as to why he held a particular state of mind." (Emphasis added.) Simply put, a witness may testify as to the declarant's statement relating to a then-existing mental condition or intent to engage in a future act, but the witness may not testify as to why the declarant was in that particular mental state or why the declarant intended to engage in the future act. Id.
 {¶ 68} As demonstrated by Donald's proffered testimony, the declarant pedestrian's statement related to his intent to commit suicide. This statement represented a present expression of intent to engage in a future act. In addition, Donald's proffered testimony revealed that the pedestrian's statements regarding suicide were due to his divorce.
 {¶ 69} While the trial court properly excluded Donald's testimony relating to why the pedestrian expressed his intent to commit suicide, it improperly excluded Donald's testimony which disclosed the pedestrian's specific statement of intent to commit suicide. Such testimony clearly fell within the purview of the state of mind exception.
 {¶ 70} The state counters by arguing that the court only limited appellant from introducing evidence of why the pedestrian stated he was intending to commit suicide. In doing so, the state notes that the court allowed Donald to testify as to the pedestrian's behavior on the evening of the accident.
 {¶ 71} Our thorough examination of the record reveals that the court specifically precluded appellant from introducing any statement made by the pedestrian regarding his intent to commit suicide. The following statements were made during a side-bar:
 {¶ 72} "Judge: If [Donald's] not talking about content of, or substance of what [the pedestrian] said, no. How he was behaving, I don't want to hear what [the pedestrian] said. But how he was behaving.
 {¶ 73} "* * *
 {¶ 74} "Judge: So he, if he's just describing the behavior and there's no content then there's no hearsay because behavior is not an assertion.
 {¶ 75} "* * *
"[Appellant's counsel]: Judge, what are you saying that I can not make any, ask [Donald] any question about [the pedestrian] making a statement that he's gonna commit suicide?
 {¶ 76} "Judge: Correct. Correct."
 {¶ 77} The foregoing shows that the court specifically precluded any testimony by Donald that would reference a statement by the pedestrian as to his intent to commit suicide. Although the reason for the pedestrian's intent to commit suicide was inadmissible, the pedestrian's statement or expression of intent to commit suicide was admissible hearsay pursuant to Evid.R. 803(3). Thus, the court abused its discretion by excluding this testimony.
 {¶ 78} We further note that the exclusion of Donald's testimony severely prejudiced appellant's defense in relation to the two counts of aggravated vehicular homicide. Appellant's defense to these charges was that the pedestrian committed suicide by jumping in front of appellant's truck. If believed, appellant's defense would abrogate the requisite proximate cause element of R.C. 2903.06(A)(1) and (2).
 {¶ 79} That is, under both counts of aggravated vehicular homicide the state was required to prove, beyond a reasonable doubt, that appellant's driving under the influence and/or reckless driving were the proximate cause of the pedestrian'sdeath. R.C. 2903.06(A)(1) and (2). See, also, State v. Hall,
2nd Dist. No. 19671, 2004-Ohio-663, at ¶ 43. Appellant's defense theory that the pedestrian committed suicide by throwing himself in front of the truck would impede the state from proving, beyond a reasonable doubt, that appellant's intoxication or recklessness were the proximate cause of the pedestrian's death.
 {¶ 80} Sgt. Barson's testimony indicated that appellant stated that the pedestrian had jumped in front of his truck. Dale testified that the reconstruction of any vehicular accident is an inexact science. As a result, he was unable to determine the location of the pedestrian's body on the road at the point of impact. In other words, there was no direct or circumstantial evidence which established where the pedestrian was located on the road when he was hit. Thus, it was impossible to ascertain whether or not the pedestrian had placed himself in front of appellant's truck.
 {¶ 81} The crucial piece of evidence to appellant's defense was the pedestrian's statement, just prior to the accident, that he intended to commit suicide. The court's improper exclusion of this evidence effectively eliminated appellant's opportunity to present his defense to the jury, thereby depriving him of a fair trial. Thus, appellant's third assignment of error is with merit, and we hereby reverse appellant's two convictions of aggravated vehicular homicide.
 {¶ 82} Under his fourth assignment of error, appellant argues that the state failed to present sufficient evidence to sustain convictions on the two counts of aggravated vehicular homicide and one count of leaving the scene of an accident. Based upon our holding under the third assignment of error, appellant's sufficiency arguments in relation to the two counts of aggravated vehicular homicide have been rendered moot. Therefore, we will only address appellant's sufficiency argument regarding his conviction on leaving the scene of an accident.
 {¶ 83} As stated previously, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Appellant maintains that the state failed to prove that appellant knew he hit the pedestrian and, therefore, failed to present sufficient evidence to sustain a conviction of leaving the scene of an accident.
 {¶ 84} R.C. 4549.02 requires a person who, while operating a motor vehicle, becomes involved in an accident or collision upon a public road or highway, and who has knowledge of such accident or collision, to stop immediately and remain at the scene until he has given his name and address to the operator of the other vehicle. Knowledge of the accident "is clearly an essential element of the offense of leaving the scene of an accident."State v. Criswell (April 30, 1993), 11th Dist. No. 92-P-0080, 1993 Ohio App. LEXIS 2305, at 4.
 {¶ 85} In the case sub judice, Sgt. Barson testified during trial that appellant stated he saw the pedestrian jump in front of his truck. Despite his knowledge that he hit the pedestrian, appellant failed to stop and instead proceeded to leave the scene of the accident. Based upon the foregoing, there was sufficient evidence presented to sustain appellant's conviction of leaving the scene of an accident. Appellant's fourth assignment of error is without merit.
 {¶ 86} Appellant's fifth assignment of error presents a manifest weight of the evidence argument. The fifth assignment of error only challenges the weight of the evidence which resulted in appellant's convictions for aggravated vehicular homicide. Based upon our holding under appellant's third assignment of error, any issue with respect to the aggravated vehicular homicide convictions have been rendered moot. Thus, appellant's fifth assignment of error is moot.
 {¶ 87} Appellant's first and fourth assignments of error are without merit, while his fifth assignment of error is moot. Therefore, we hereby affirm appellant's convictions of leaving the scene of an accident and DUI. However, appellant's second and third assignments of error are with merit. Accordingly, we hereby reverse appellant's conviction for driving with a prohibited concentration of alcohol in bodily substances and his two convictions of aggravated vehicular homicide, and remand this matter for further proceedings consistent with our opinion.
O'Neill, J., Rice, J., concur.