[Cite as *State v. Bayer*, 2015-Ohio-4138.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14-CA-55 |
| CHRISTOPHER B. BAYER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Criminal appeal from the Fairfield Court of Common Pleas, Case No. 2011-CR-0491

JUDGMENT:       Affirmed

DATE OF JUDGMENT ENTRY:       October 2, 2015

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

GREGG MARX                             SCOTT WOOD
DARREN L. MEADE                   144 East Main Street
239 West Main Street, Ste. 101      Lancaster, OH 43130
Lancaster, OH 43130

*Gwin, P.J.*

{¶1} Appellant, Christopher B. Bayer, II ["Bayer"] appeals his convictions and sentences after a jury trial in the Fairfield County Court of Common Pleas for one count of aggravated vehicular homicide, a felony of the second degree, one count of vehicular homicide, a first degree misdemeanor, and two counts of operating a motor vehicle while under the influence of alcohol, misdemeanors of the first degree.

*Facts and procedural History*

{¶2} On October 15, 2011, Bayer was driving a motor vehicle that struck and killed 69-year-old Mary Nutter while she was walking home on West Fair Avenue, in Lancaster, Ohio. A subsequent breath test revealed Bayer's blood alcohol content to be 0.115.[1]

{¶3} On October 17, 2011, Bayer was charged by Complaint in the Fairfield County Municipal Court with one count of aggravated vehicular homicide, a felony of the second degree, in violation of R.C. 2903.06(A)(1)(a), and one count of reckless homicide, a felony of the third degree, in violation of R.C. 2903.041. On that same date, Bayer was arraigned and entered pleas of not guilty. Bayer was placed on bond with a number of conditions, including a requirement that he wear an alcohol monitor.

{¶4} On October 28, 2011, Bayer waived his right to a preliminary hearing and agreed to be bound over to the Grand Jury. Bayer remained under the conditions of his bond.

{¶5} On November 3, 2011, the transcript from the Fairfield County

---

[1] A Statement of the Facts underlying Bayer's conviction is unnecessary to our disposition of this appeal. Any facts needed to clarify the issues addressed in Bayer's assignment of error shall be contained therein.

Municipal Court was filed in the Fairfield County Common Pleas Court and assigned Case Number 2011-CR-491.

{¶6} Case number 2011-CR-491 was dismissed by the state via a nolle prosequi filed on June 20, 2012. The entry reads,

> This day comes the Assistant Prosecuting Attorney, on behalf of the State of Ohio, and in open Court, for good cause shown, hereby dismisses this case for the reason that the charge in this case will be presented to the Grand Jury for Indictment.
>
> Leave of Court is hereby granted to enter the above dismissal.

Nolle Prosequi (R.C.2941.33) June 12, 2012, filed June 20, 2012. The prosecuting attorney and the trial judge signed the entry.

{¶7} On August 22, 2014, Bayer was indicted in Case Number 2014-CR-345 for aggravated vehicular homicide, a felony of the second degree, in violation of R.C. 2903.06(A)(1)(a), aggravated vehicular homicide, a felony of the third degree, in violation of R.C. 2903.06(A)(2)(1), and two counts of operating a motor vehicle while under the influence of alcohol, misdemeanors of the first degree, in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d).

{¶8} On August 26, 2014, a jury trial commenced.

{¶9} On August 27, 2014, one day after the jury trial began, the trial court ordered that Case Number 2014-CR-345 be consolidated with Case Number 2011-CR-491 and that Case Number 2011-CR-491 be "reopened" for trial purposes.

{¶10} On August 29, 2014, the jury returned a verdict of guilty on the charge of aggravated vehicular homicide, a felony of the second degree, not guilty on the

charge of aggravated vehicular homicide, a felony of the third degree, but guilty of the lesser included offense of vehicular homicide, a first degree misdemeanor, and guilty on both counts of operating a motor vehicle while under the influence of alcohol, misdemeanors of the first degree.

{¶11} On September 25, 2014, Bayer was sentenced to four years in a state penal institution on the aggravated vehicular homicide charge. Bayer was not sentenced on the lesser-included offense of vehicular homicide, a first-degree misdemeanor, as it merged with the aggravated vehicular homicide charge. For sentencing purposes, the trial court merged the two OVI charges together and sentenced Bayer to, among other conditions, five years of community control.

*Assignments of error*

{¶12} Bayer raises two assignments of error,

{¶13} "I. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶14} "II. THE TRIAL COURT ERRED IN SENTENCING APPELLANT."

I.

{¶15} In his first assignment of error, Bayer contends that his trial counsel was ineffective for failing to file a motion to dismiss on speedy trial grounds.

{¶16} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122

L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶17} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

{¶18} Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.
>
> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary

process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

**{¶19}** In cases involving a failure to make a motion on behalf of the defendant or oppose a motion by the state, a defendant is required to: (1) show that the motion or opposition thereto was meritorious, and (2) show that there was a reasonable probability that the verdict would have been different had the motion been made or opposed. *State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798(2001); *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293(1990).

**{¶20}** An appellant's failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal. *See State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶37;

*State v. Talley,* 5th Dist. Richland No. 06 CA 46-D, 2007-Ohio-2902, ¶ 41; *State v. Thompson*, 97 Ohio App.3d 183, 186-187, 646 N.E.2d 499(6th Dist 1994).

**Speedy trial.**

{¶21} The right to a speedy trial is a fundamental right of a criminal defendant that is guaranteed by the United States and Ohio Constitutions. Sixth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 10; *State v. Ramey*, 132 Ohio St .3d 309, 2012–Ohio–2904, ¶14. In Ohio, an accused has a statutory right to a speedy trial. *State v. Jackson*, 9th Dist. Lorain No. 11 CA010012, 2012–Ohio–3524, ¶ 8. Speedy trial statutes "constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980), syllabus. Accordingly, "[t]he prosecution and the trial courts have a mandatory duty to try an accused within the time frame provided by the statute" and "[s]trict compliance with the statute is required." *Ramey* at ¶14. A person charged with a felony must be brought to trial within 270 days of his or her arrest and each day the accused is held in jail in lieu of bail will be counted as three days. R.C. 2945.71(C)(2); R.C. 2945.71(E). The accused's speedy trial clock begins to run on the day after arrest or service of summons. *State v. Szorady*, 9th Dist. Lorain No. 02CA008159, 2003–Ohio–2716, ¶ 12. "However, R.C. 2945.72 lists various events that will toll the running of the speedy-trial clock." State v. Stevens, 9th Dist. Lorain No. 11 CA009995, 2012–Ohio–4095, ¶ 5. "In addition to meticulously delineating the tolling events, the General Assembly jealously guarded its judgment as to the reasonableness of delay by providing that time in which to bring an accused to trial 'may be extended only by' the events enumerated in R.C. 2945.72(A)

through (I)." *Ramey* at ¶ 24, quoting R.C. 2945.72. Thus, the "'extensions are to be strictly construed, and not liberalized in favor of the state.'" *Ramey* at ¶ 24, *quoting State v. Singer*, 50 Ohio St.2d 103, 109, 362 N.E.2d 1216 (1977).

**{¶22}** In the case at bar, Bayer was originally charged on October 17, 2011. The initial charges were dismissed by Judgment Entry filed on June 20, 2012. Pursuant to the express dictates of R.C. 2945.71, the speedy-trial statute shall run against the state only during the time in which an indictment or charge of felony is pending. See R.C. 2945.71(C). Accordingly, 247 days is chargeable against the state for speedy trial purposes.

**{¶23}** Bayer was subsequently indicted on August 22, 2014. In *State v. Bonarrigo,* the Ohio Supreme Court noted,

> In *State v. Spratz* (1979), 58 Ohio St.2d 61, 62, at fn. 2, 388 N.E.2d 751, we expressly noted that the entry of a nolle prosequi on a felony charge tolled the running of statutory speedy trial time until such time as the accused was re-indicted. Similarly, in *Westlake v. Cougill* (1978), 56 Ohio St.2d 230, 383 N.E.2d 599, we excluded from the computation of speedy trial time a period between a nolle prosequi of misdemeanor charges and the service of summons of a second filing of misdemeanor charges arising out of the same conduct. In both cases, credit was given the accused for the period of time the charges based on the same conduct were pending prior to entry of the nolle prosequi.

62 Ohio St.2d 7, 9-10, 402 N.E.2d 530(1980). It is well-established that for purposes of computing how much time has run against the state under R.C. 2945.71 et seq., the

time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim.R. 12(I). *State v. Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541 (1991), paragraph one of the syllabus.

{¶24} Bayer's trial commenced on August 26, 2014. Thus, 5 days are chargeable against the state for speedy trial purposes. However, upon indictment, the 247 days chargeable to the state in the original case is added to the speedy-trial time. Thus, a total of 252 days of the 270 days had expired prior to the commencement of Bayer's trial. Thus, there was no speedy trial violation.

**Release from bond.**

{¶25} However, Bayer contends that the speedy trial time continued to run following the dismissal on June 20, 2012 because the court never officially released him from bond.

{¶26} In *State v. Broughton* 62 Ohio St.3d 253, 258, 581 N.E.2d 541, the Ohio Supreme Court stated "the speedy trial statute shall run against the state only during the time in which an indictment or charge of felony is pending." Thus, the *Broughton* Court held:

> For purposes of computing how much time has run against the
> state under R.C. 2945.71 et seq., the time period between the dismissal
> without prejudice of an original indictment and the filing of a subsequent
> indictment, premised upon the same facts as alleged in the original

indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim.R. 12(I).

Id. at syllabus para. 1. (Footnote omitted).

{¶27} Further, *Broughton* noted that solely because a defendant may have suffered anxiety or apprehension during the period between the dismissal of the first indictment and reindictment does not mean the time period must be counted and attributed to the State for speedy trial purposes. 62 Ohio St.3d at 258, 581 N.E.2d 541. (Citations omitted).

{¶28} Appellate districts, included our own, interpreting *Broughton* have subsequently found that a trial court's failure to explicitly declare that a defendant is released from bail in the entry of dismissal pursuant to Crim.R. 48(A) does not necessarily mean that the defendant's bail is continued pursuant to Crim.R. 12(J).[2]

{¶29} In *State v. Buck*, 4th Dist. Ross No. 98CA2438, 1999 WL 253485( Aug. 20, 1999), the Fourth Appellate District found no evidence in the record indicating that the trial court continued the defendant's bail following the dismissal of the original indictment pursuant to Crim.R. 12(J). Further, the appellate court noted that the defendant's recognizance form required him to comply with the bond terms "until such case is finally disposed of," and concluded that once the criminal charges were dismissed, the bail obligations were also extinguished. Accordingly, the appellate court concluded that the trial court had intended for the defendant's bail obligation to terminate upon dismissal of the indictment and, pursuant to *Broughton*, found that the time period between the dismissal and the refiling was tolled. *Accord, State v. Biser,* 5th Dist. Licking No. 06CA00045, 2007-Ohio-1960, ¶23; *State v. Gearhart,* 5th Dist Licking

---

[2] Formerly Crim.R. 12(I).

No. 99CA107, 2000WL329670 (Mar. 10, 2000); *State v. Heft,* 3rd Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶45; *State v. Alexander*, 4th Dist. Scioto No. 08CA3221, 2009-Ohio-1401, ¶27.

{¶30} In the case at bar, we find nothing in the record before us that the trial court ordered Bayer's bond continued subsequent to the entry for the dismissal. A nolle prosequi concludes a prosecution and it cannot be reinstated at a later date. Any action taken subsequent to the filing of a nolle prosequi is a nullity. *Indian Hill v. Ledgerwood, 1st Dist. Hamilton No. C-120448, 2013-Ohio-1812,* ¶13 (citing *State v. Eubank*, 6th Dist. No. L–11–1211, 2012–Ohio–3512, ¶ 7; *Gates Mills v. Yomtovian*, 8th Dist. No. 88942, 2007–Ohio–6303, ¶ 21–22).

**Nolle prosequi not properly entered.**

{¶31} Bayer further contends that the nolle prosequi was not properly entered; therefore, time continued to run from the date of his initial arrest for speedy trial purposes.

{¶32} R.C. 2941.33, Nolle prosequi, which was enacted October 1, 1953 states, "The prosecuting attorney *shall* not enter a nolle prosequi in any cause without leave of the court, on good cause shown, in open court. A nolle prosequi entered contrary to this section is invalid."(Emphasis added). In *State v. Mucci,* the Court noted,

> These rules and statutes have been promulgated and enacted in order to curb abuses of executive prerogative. Under the common-law rule, a prosecutor had unlimited discretion to enter a nolle prosequi without any court involvement; however, the legislators and courts of this state and the federal government have acted to take this unlimited

postindictment discretion away from the prosecutor. See 1944 Advisory

Committee Notes to Fed.Crim.R. 48(A). See, also, Restatement of the

Law, Contracts (1932), Section 549 (the prosecutor can bargain to

recommend dismissal but not to secure dismissal). Therefore, a court in

this state functions as a check and balance to the discretion of a

prosecutor to dismiss an indictment.

150 Ohio App.3d 493, 2002-Ohio-6896, 782 N.E.2d 133, ¶27. *Accord, State v. Neely*,

11th Dist. Lake No. 2004-L-197, 2005-Ohio-7045, ¶42.

{¶33} Crim.R. 48(A) provides, "The state *may* by leave of court and in open

court file an entry of dismissal of an indictment, information, or complaint and the

prosecution shall thereupon terminate." (Emphasis added). Crim.R. 48 was adopted

July 1, 1973, nearly 20 years after R.C. 2941.33[3].

{¶34} In *State v. Pendleton,* this Court found,

> [T]he term 'open court' means that court is in session and the judge
>
> is on the bench." *State v. Monroe*, (June 14, 2000) 4th Dist. No. 99CA632,
>
> (*citing Linden v. Bates Truck Lines Inc.*, (1982) 4 Ohio App.3d 178, 180,
>
> 446 N.E.2d 1139).

5th Dist. Licking Nos. 10 CA 81, 10 CA 82, 2011-Ohio-2024, ¶39. We note in the case

at bar the trial court approved the state's dismissal of the charges by Judgment Entry

filed June 20, 2012. The reason for the dismissal was that the state was going to

present the case to the grand jury for indictment.

---

[3] Statutes in conflict with the rules promulgated by the Ohio Supreme Court have been declared invalid and to have no force and effect. *Hiatt v. Southern Health Facilities, Inc.,* 68 Ohio St.3d 236, 626 N.E.2d 71(1994); *In re Coy*, 67 Ohio St.3d 215, 616 N.E.2d 1105(1993).

{¶35} Under Article I, Section 10 of the Ohio Constitution, "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." The Constitution of Ohio requires, except in rare cases, that felonies be prosecuted by indictment. Constitution, Article I, Section 10. "There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence thereof the court acquires no jurisdiction whatever, and if it assumes jurisdiction, a trial and conviction are a nullity." *Stewart v. State*, 41 Ohio App. 351, 181 N.E. 111(4th Dist. 1932), (*citing Doyle v. State,* 17 Ohio 222, 1848 WL 101 (Ohio 1848)). *Accord, State v. Manns,* 5th Dist. Richland No. 11-CA-28, 2012-Ohio-234, ¶31.

{¶36} In addressing this issue in the context of the federal counterpart to Civ.R. 48(A) the Fifth Circuit has stated,

> [I]t seems altogether proper to say that the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated.

The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest.

*United States v. Cowan*, 524 F.2d 504, 513 (5th Cir.1975).

**{¶37}** In *Rinaldi v. United States*, 434 U.S. 22, 29–30, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), the Supreme Court observed,

The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection....But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.

*Rinaldi*, 434 U.S. at 30, note 15, 98 S.Ct. 81 (internal citations omitted).

**{¶38}** Crim.R. 48 does not require that the state file a *motion*; rather the rule dictates that the state request leave of court to file "*an entry of dismissal."* The state is not required to obtain the defendant's consent prior to dismissing the case. *U.S. v. Delagarza*, 650 F.2d 1166, 1167(10th Dist. 1981); *U.S. v. Valencia*, 492 F.2d 1071, 1074(9th Cir. 1974); *U.S. v. Manbeck, 514* F.Supp. 152*(*S.C. 1981). Rather the

question that the court must consider when the state requests leave to file an entry of dismissal is whether the prosecutor has abused the prosecutorial discretion afforded him or whether the dismissal is clearly contrary to the public interest. Accordingly, in the case at bar, it cannot be said that the state's motivation for dismissing the charges while awaiting grand jury indictment discloses an improper motive on the state's part or that the dismissal is contrary to manifest public interest. Bayer has neither argued nor suggested either in his brief. Bayer has failed to assert before this Court any legal argument, meritorious or otherwise, in opposition to the granting of the *nolle prosequi.*

{¶39} On August 17, 2012, Bayer did file a motion to release his motor vehicle. The court heard that motion on September 5, 2012. Clearly Bayer could have, but did not, object to the state's dismissal of the charges against him. Bayer neither filed an objection in the trial court to the dismissal nor appealed the trial court's dismissal entry.[4]

{¶40} If consent of a defendant prior to dismissal is not necessary, Bayer cannot show he was prejudiced by the failure of the court to notify him prior to dismissing the charges. Bayer did not lose his right to raise his speedy trial challenge when the indictment was subsequently issued. Bayer has not separately briefed and argued that any delays, other than those attributable to the "failure to release from bail" argument is chargeable to the state under the statute. Nor has Bayer briefed and argued that his constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, his right to due process under the Fifth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution have been abrogated by the delay between his initial arrest and

---

[4] Bayer could have sought leave to file a delayed appeal from the trial court's June 20, 2012 dismissal entry pursuant to App.R. 5.

eventual indictment. *See generally, Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101(1972).

**{¶41}** In *State v. Biser*, this Court noted,

> Like the Court in *Buck*, we find no evidence in the record from which we can conclude the trial court continued appellant's bail pursuant to Crim. R.12 (I) following the August 29, 2005 dismissal entry. We recognize *Broughton* and *Buck*, as well as other cases reviewed by this Court appear distinguishable from the instant action, as it appears the defendants in those cases were on notice of the dismissal of the original charges against them, whereas appellant herein was not provided with either notice of the motion to dismiss not the actual dismissal. Despite the State's failure to serve appellant with the motion to dismiss and the trial court's subsequent failure to serve appellant with the dismissal entry, we, nevertheless, find *Broughton* controls and further find the speedy trial time was tolled during the period from August 30, 2005, to November 8, 2005. Thus, we find no violation of appellant's right to a speedy trial.

5th Dist. Licking No. 06CA00045, 2007-Ohio-1960, ¶23 (footnote omitted).

### *Conclusion*

**{¶42}** The state sought and obtained leave of court to dismiss the original charges against Bayer on June 20, 2012. Therefore, time was tolled for speedy trial considerations until Bayer was indicted on August 22, 2014. Accordingly, only 252 of the 270 days mandated by R.C. 2845.71 had expired prior to the commencement of trial on August 26, 2014. There was no speedy trial violation.

{¶43} Bayer has not asserted any argument that an objection to *nolle prosequi* would have been meritorious or that there was a reasonable probability the trial court would have denied the state leave to file a *nolle prosequi.* Therefore, Bayer cannot show prejudice under the second prong of *Strickland.*

{¶44} Accordingly, trial counsel was not ineffective by failing to file a motion to dismiss on speedy trial grounds.

{¶45} Bayer's first assignment of error is overruled

II.

{¶46} In his second assignment of error, Bayer argues the OVI charges should have merged with the aggravated vehicular homicide charge because the OVI's are a lesser-included offense. Accordingly, Bayer submits, the trial court erred in sentencing him to the underlying OVI charge after sentencing him on the charge of aggravated vehicular homicide.

{¶47} In *State v. Dunham*, 5th Dist. Richland No. 13CA26, 2014–Ohio–1042, this Court concluded that even if the offenses were allied offenses of similar import, "R.C. 2929.41(B)(3) creates an exception to the general rule provided in R .C. 2941.25 that allied offenses must be merged [and] the trial court had the discretion, pursuant to R.C. 2929.419(B)(3), to enter convictions * * * and to sentence [defendant] to serve consecutive sentences for" these crimes. Id. at ¶¶76-77(*citing* State v. Bayer, 10th Dist. Franklin No. 11AP–733, 2012–Ohio–5469*): Accord, State v. Bigerton*, 5th Dist. Fairfield No. 14-CA-59, 2015-Ohio-2565, ¶6; *State v. Demirci,* 11th Dist. Lake No.2011–L–142, 2013–Ohio–2399; *State v. Earley*, 8th Dist. Cuyahoga No. 100482, 2014–Ohio–2643, ¶ 7–21. However, several districts have found the offenses to be allied offenses of similar

import. *State v. West*, 2d Dist. Montgomery No. 23547, 2010–Ohio–1786, ¶ 43; *State v. Phelps*, 12th Dist. Butler No. CA2009–09–243, 2010–Ohio–3257, ¶ 28–32; *State v. Mendoza*, 6th Dist. Wood No. WD–10–008, 2012–Ohio–5988, ¶ 10–11.

{¶48} As the Second District Court of Appeals has noted,

In October 2014, the Supreme Court of Ohio accepted a certified conflict between the decision in *Earley* and the decisions in *West, Phelps*, and *Mendoza. See State v. Earley*, 140 Ohio St.3d 1450, 2014–Ohio–4414, 17 N.E.3d 597 (Table). The court described the certified question as follows:

When the offense of operating a motor vehicle while under the influence in violation of R.C. 4511.19(A)(1) is the predicate conduct for aggravated vehicular assault in violation [of] R.C. 2903 .08(A)(1), are the two offenses allied, and if so, does R.C. 2929.41(B)(3) create an exception that allows a trial court to impose a sentence for both offenses?

*State v. Schidecker,* 2nd Dist. Montgomery No. 26334, 2015-Ohio-1400, ¶27.

{¶49} We shall adhere to our previous analysis that R.C. 2929.41(B)(3) creates an exception to the general rule provided in R .C. 2941.25 that allied offenses must be merged and, therefore, the trial court had the discretion, pursuant to R.C. 2929.419(B)(3), to enter convictions and to sentence Bayer for these crimes until further instruction from the Ohio Supreme Court.

{¶50} Bayer's second assignment of error is overruled.

{¶51} The judgment of the Court of Common Pleas, Fairfield County, Ohio is affirmed.

By Gwin, P.J., and

Wise, J., concur;

Baldwin, J., dissents

*Baldwin, J., dissenting*

{¶52} I respectfully dissent from the majority's disposition of the first assignment of error. I would find that the time was not tolled from June 20, 2012 to August 22, 2014, because the nolle prosequi was not properly entered.

{¶53} Crim. R. 48(A) provides that, "[t]he state may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate." Similarly, R.C. 2941.33 provides, "The prosecuting attorney shall not enter a nolle prosequi in any cause without leave of the court, on good cause shown, in open court. A nolle prosequi entered contrary to this section is invalid."

{¶54} Under both the rule and the statute, a hearing on a motion of this type, made by the prosecution, is available upon request by the defense for such a hearing. *State v. Monroe,* 4th Dist. Pike No. 99CA 632, 2000 WL 807228 (June 14, 2000). In most cases, the defendant is not prejudiced by the dismissal of charges against him, and dismissal may be entered in chambers, or by entry, with the knowledge of defendant, or defendant's counsel. *Id.* Therefore, when the defendant does not have notice of the nolle prosequi, the dismissal is invalid and the speedy trial time continues to run. *Id.* Based on the reasoning in *Monroe,* the Ninth District similarly concluded that a nolle prosequi entered without notice to the defendant is null and void, and the dismissal does not toll the time within which the defendant must be brought to trial for speedy trial purposes. *State v. Davis,* 9th Dist. Lorain No. 08CA009412, 2008-Ohio-6741, ¶20.

{¶55} In order for the "open court" requirement set forth in the statute and the rule to have meaning, the defendant must be notified of the motion and be given an opportunity respond or to request a hearing. The record does not reflect that appellant was so notified in the instant case, and I would therefore conclude that the nolle prosequi was invalid and the speedy trial time continued to run. Appellant was not

brought to trial until August 26, 2014, well beyond the 270 day time limit imposed by R.C. 2945.71(C). Accordingly, I would find that counsel was ineffective for failing to file a motion to dismiss based on violation of appellant's right to a speedy trial and sustain the first assignment of error.


_____

HON. CRAIG R. BALDWIN